Chappell v. Allen et als.

————————

JANE E. CHAPPELL, Respondent, v. THOMAS ALLEN, TERRE HAUTE, ALTON AND ST. LOUIS RAILROAD COMPANY, AND JOSHUA H. ALEXANDER, Appellants.

1. *Mortgage—Deed of Trust—Debt.*—Where notes are given secured by a deed of trust or mortgage, the assignment of any of the notes is an equitable assignment of the security in the same proportion.

2. *Notes—Equities.*—A party receiving notes after they are past due, is put upon inquiry, and will be considered as having taken them with full notice of all the infirmities or equities which attach to them.

3. *Practice—Instructions.*—Instructions should be predicated on the whole testimony, and when they have a tendency to restrict the consideration of the jury to isolated facts, to the exclusion of other facts which are before them in evidence, it is not only a misdirection but an infringement on the province of the triers of the facts.

4. *Mortgage—Entry of Satisfaction.*—The entry of satisfaction of the debt made upon the margin of the record of a mortgage or deed of trust, in pursuance of the provisions of the statute, is in law evidence to show that the note or debt, upon which the mortgage or deed of trust is founded, has been paid; and the acknowledgment must be rebutted by evidence.

5. *Partnership—Dissolution.*—After the dissolution of a partnership, one partner may endorse the notes and bills of the firm in liquidation to settle up the partnership business; but he cannot, without the consent of his co-partners, make such endorsement to pay a private debt of his own, or in the transaction of business wholly unconnected with the partnership affairs.

6. *Witness—Assignor.*—An assignor of a note or chose in action is not a competent witness to prove facts occurring prior to the assignment.*

* This rule is changed by the Rev. Stat. 1866, ch. 144.

*Appeal from St. Louis Court of Common Pleas.*

The plaintiff sued as endorsee of several promissory notes, executed by the Terre Haute, Alton and St. Louis Railroad Company as makers, and endorsed by Valentine & Co. (a firm composed of Charles H. Valentine, J. S. Dunlap and J. H. Alexander) and Thomas Allen; one for $2,176.18, dated November 18, 1857, to order of Thomas Allen, payable at nine months; one for $2,120.76, at twelve months, to the order of Allen, and endorsed by him and Valentine & Co.; one for $2,277.34, at fifteen months, to order of Allen, endorsed in the same order; and one for $1,625.60, dated May 21, 1858, to order of Allen, and endorsed in the same manner.

Allen answered, pleading that the notes were executed by the Terre Haute, Alton and St. Louis Railroad Company for the accommodation of the payees, Valentine & Co., and were endorsed by him also for accommodation of payees, to enable the payees to raise money to pay a debt they owed the makers; that the notes were delivered to the plaintiff by said Alexander, one of the firm of Valentine & Co., after they were past due and protested; that at the maturity of the notes Valentine & Co. owed the railroad company more than the sum due upon the notes; that Valentine & Co. agreed and promised to pay the notes; and that Allen had himself paid the amount of the notes to the parties holding them.

The suit was dismissed as to Valentine, and judgment by default rendered against the railroad company and J. H. Alexander.

At the trial, the plaintiff presented the notes and endorsements, and rested.

The defendant gave in evidence a deed of trust, dated December 30, 1857, made by the Valentine Freight Express Company, a corporation owned by Valentine & Co., conveying to S. Copp, trustee, all the property of the company, &c., conditioned, that as Thomas Allen had endorsed notes and bills for the maker, and promised to endorse renewals thereof,

the said deed was to secure the payment of said notes and bills, and secure said Allen from all loss and damage from his said endorsements. The deed proceeded to specify the paper which Allen had endorsed and from which he was to be secured, and, among others, mentioned the note for $2,-176.18, the note for $2,274.34, and a note for $2,125.60—the two first named being the notes sued on, and the last being a note which was paid in part, and renewed by the note of $1,-625.60, sued on. This deed was recorded March 13, 1858.

On the 28th November, 1859, Alexander acknowledged full satisfaction of the deed of trust, by entry on the margin of the record: "I, * * * , assignee of Thomas Allen et al., acknowledge to have received full satisfaction of said deed of trust, and release the premises and property conveyed * * * Witness my hand and seal * * .—J. H. Alexander. [Seal.]"

The defendant Allen further offered evidence tending to prove that the notes sued upon were secured by the deed of trust; that they were in the hands of Lucas & Co., and that he had himself paid the notes to Lucas & Co. and others, the holders, after maturity and protest.

Defendant Allen also read in evidence another deed of trust, made by J. H. Alexander, conveying to S. Copp, trustee of Allen, lands in Illinois, and also a large part of the property described in the deed of trust of December 30, 1857, to secure Allen against his endorsements of bills and notes for J. H. Alexander, and the renewals of said bills and notes.

Evidence was also offered tending to prove that the notes sued upon were taken up and paid by the check of the firm of J. H. & F. R. Alexander, of which firm J. H. Alexander was a member.

Plaintiff offered evidence tending to prove that the notes were delivered to her in October, 1860, in payment of a debt due her by J. H. Alexander. J. H. & F. R. Alexander suspended in the fall of 1859, and J. H. Alexander was insolvent in the spring of 1860.

Evidence was also offered tending to show a large indebtedness to the railroad company at the date of the notes by Valentine & Co.

Plaintiff also read in evidence a receipt of J. H. Alexander, dated January 16, 1860, tending to show that at that time J. H. Alexander was indebted to Allen upon his endorsements.

Defendant also offered to read the depositions of C. H. Valentine and J. S. Dunlap, of the firm of Valentine & Co., the testimony in which referred to matters prior to their endorsements. These depositions were excluded by the court.

At the instance of the respondent, the court gave the following instructions:

1. The jury are instructed, that if the notes sued on were made by the Terre Haute, Alton and St. Louis Railroad Company, payable to the defendant Allen, and by him endorsed, and then endorsed by Valentine, and that Joshua H. Alexander was a member of that firm; and that said notes in that condition went into the possession of James H. Lucas & Co., for value, before maturity; and that at the maturity of said notes they were presented for payment to the maker thereof at the place where said notes were made payable, and were not paid, and were protested for non-payment, and that said Allen and Valentine & Co. were notified thereof; and afterwards the said Alexander, or any firm of which he was a member, took up and paid the same, and afterwards delivered them to the plaintiff for value, in the condition aforesaid, before this suit was brought, then *prima facie* the plaintiff is entitled to recover.

2. And if the jury find that plaintiff acquired the notes sued on as above stated, after maturity, for value, then she is entitled to recover, unless the jury are satisfied that the identical notes sued on were paid with money or assets of the maker or defendant Allen, or that said notes were made by the maker and endorsed by defendant Allen for the accommodation of Valentine & Co., or that said notes were execu-

ted and endorsed as the renewal of paper executed for the accommodation of Valentine & Co.

To the giving of which defendants excepted.

At the instance of the appellants, the court gave the following instruction:

1. If the jury find, from the evidence in the cause, that the notes sued on were endorsed by said Allen, the defendant, for the accommodation of Valentine & Co.—that is, with the understanding that Valentine & Co. were to take up and pay the said notes, and save said Allen from paying any part thereof; and that J. H. Alexander was a member of the firm of Valentine & Co.; and that when the said notes fell due, they were taken up and paid either by said Allen, or by said Alexander, or by Valentine & Co., and afterwards said Alexander transferred the notes sued on to the plaintiff after they were so due, she cannot recover in this suit.

The appellants asked the following instructions, which were refused:

2. If the jury believe from the evidence that the deed of the Valentine Express Company, given in evidence by defendant, is genuine, and that Joshua H. Alexander executed the release on the margin of the record thereof, at the date therein named, then the jury are instructed that said plaintiff cannot recover in this action upon any notes described in said deed of trust that were in his possession at the time of, or after the time, the release was made, and before the transfer to the plaintiff.

3. If the jury find, from the evidence in this cause, that the firm of Valentine & Co. has ceased to do business and been dissolved; and, after said firm was dissolved, Joshua H. Alexander (who had been a member of the firm of Valentine & Co.), of his motion, transferred the notes sued on to the plaintiff, the plaintiff cannot recover.

To the refusal of which the appellants excepted.

The case was then submitted to the jury, and, after the jury had been out for some time, by request of the jury, the court gave the following instruction:

In answer to the question of the jury, the court instructs them, that, if they find from the evidence that the defendant Allen endorsed the notes sued on for the accommodation of Valentine & Co., then the fact (if the jury find it as a fact) that Allen received 2½ per cent. for his endorsement does not make the notes any the less accommodation paper; nor does the fact, if it be so, that the defendant received security to indemnify him for his endorsement, change the character of his liability.

*Glover & Shepley*, for appellants.

The release of the mortgage satisfied the mortgage debt— 3 Cush., Mass., 540; 29 Me. 448. The execution of a release to the maker of a note discharges (that is, releases) all the other parties—29 Me. 448 ; 1 Serg. & R. 317.

A release under seal operates *per se* as an extinguishment of the debt to which it refers—Stearns v. Tappan, 5 Duer, 297. It cannot be contradicted by parol, as may a receipt— McCrea v. Purmont, 16 Wen'd. 474. It cannot be pretended that the release made by Alexander refers only to the property mentioned in the deed. It expressly refers to the debt secured by the deed. It says, "full satisfaction of the deed of trust has been received." But what is satisfaction of the deed? It can only be satisfaction of the notes—of the debts secured; that is, all money due, or secured by the deed, has been paid, or satisfied, or discharged; and the instrument being under seal, is a full and perfect discharge and extinguishment of the debt—5 Barb., S. C. 459 ; 7 Md. 117 ; 22 Pick. 308; 27 Mo. 40; 21 Pick. 30; 18 Pick. 346; 17 Mass. 581 ; 23 Pick. 444.

It is not essential any money should be paid ; satisfaction in any way is sufficient—27 Mo. 462; 1 Cow. 122.

If a man acknowledges himself to be satisfied by deed, it is a good bar, without anything received. The instrument under seal is sufficient, because it imports a consideration—5 Fa. 424. It is a full discharge *per se*—6 Cal. 186. When satisfaction is acknowledged under seal, the release operates

*per se,* and evidence *aliunde* is inadmissible to explain or limit its effect—2 Lit. 336; 7 J. J. Marsh, 67; 2 Dana, 107; 3 Dana, 21; 11 B. Mon. 75; 12 B. Mon. 496.

A receipt is evidence of payment, satisfaction, discharge; but evidence may be brought to contradict or explain a receipt—8 Pick. 131; 14 Ind. 324; 19 Conn. 177; 25 Conn. 487; 4 E. D. Smith, 54; 20 Penn. 50; 33 Penn. 268; 13 Md. 379; 33 Ala. 485; 27 Mo. 40.

In the absence of any proof tending to show the debt had not been paid, the entry on the margin of the record, if considered only as a receipt, was absolutely conclusive of the payment of the debt—5 Hill, 276. There was no such evidence. If, therefore, the entry was a receipt of satisfaction only by Alexander, it was conclusive of the payment of the debt to him (Alexander), and in no event could he maintain an action on it, or confer a right of action on the plaintiff, who took it long after it was due, and, of course, with notice of any defence existing against it. The refusal of the court to give the instruction mentioned above was therefore erroneous. The very law under which the marginal entry was made only permits such entry to be made in case the mortgage is satisfied—R. C. 1855, p. 1091, § 21.

But there is another ground on which the instruction ought to have been given. The railroad company was maker of all the notes sued on. The appellant Allen was endorser on the paper. This fact of itself made him, by the form of the notes, a surety of the maker—Hurley v. Brown, 16 J. R. 73; English v. Donley, 2 Bos. & Pul. 61. The deed of trust recognized this fact, for it was made to protect Allen against the payment of three of the notes. But Alexander, while he had these notes in his possession, pretending to own them, and having all the title he conveyed to plaintiff, released the deed of trust, took the property into his own possession, sold some of it, and mortgaged the rest by the second deed of trust to Copp, to secure other paper which Allen was to endorse for him. This was warranting the title good to Allen, free from encumbrances, and discharging all claim on the notes as

against Allen, and satisfying the debt secured by the deed of trust—4 Met. Mass. 164; 4 J. Ch. 129: 15 N. H. 122.

The facts stated in this instruction showed that plaintiff was not the owner of the notes.

After the dissolution of a firm, one former partner cannot transfer paper of the firm—7 Mo. 544;. 3 Kent Com. 63; 1 Hill, 572. This was the only transaction of Chappell in respect to the firm properly ; she never had any dealings with the firm of Valentine & Co.—1 Humph., Tenn., 51.

*Cline & Jamieson*, for respondent.

R. C. 1855, p. 1577, § 6, says the following persons shall be incompetent to testify, &c. : " any assignor of an account, judgment, or thing in action, concerning facts occurring anterior to the assignment"—Parish v. Frampton, 32 Mo. 396 ; Hamilton v. Scull, 25 Mo. 165.

The first instruction asked by the apellant, and refused, was properly refused : 1. Because the deed of trust was on personal property, and was not executed by the maker or any endorser of said notes. 2. Because the mere fact of releasing the whole or a portion of the security does not destroy the notes, or operate, *ipso facto*, as payment or extinguishment of the notes or the debt. The statute does not require satisfaction to be under seal (even of real estate), and the entry, at the utmost, is only *prima facie* evidence of payment —Vallé v. Amer. Iron Mt. Co., 2⁻ Mo. 455.

The effect of entering satisfaction is to extinguish the encumbrance on the property (not the debt), in favor of the real owner of the property—Gale v. Mensing, 20 Mo. 461.

The second instruction asked by appellants was properly refused.

The notes were endorsed by appellant and Valentine & Co. in blank, and discounted before their maturity ; were protested for non-payment, and then taken up by J. H. Alexander, one of the endorsers, and delivered to the respondent for value—Boeka v. Nuella, 28 Mo. 180 ; Willard v. Moies, 30 Mo. 142—in which cases the court decided that the title to a

promissory note passed by delivery without a written endorsement—Glasgow v. Switzer, 12 Mo., 395.

It was properly refused; because even if the firm were dissolved, and the respondent was ignorant of it, the title would pass—Levy v. Story, 10 Mo. 636; McDaniel v. Wood, 7 Mo. 543.

WAGNER, Judge, delivered the opinion of the court.

It will be unnecessary to give a summary of all the facts in this case, or to notice in detail all the points made. The whole transaction, from the endorsement of the notes by Allen, in 1857, to Valentine & Co. to the final close of the business after the execution of the second deed of trust by Alexander, must be taken into consideration to form a correct conclusion as to the legal merits and claims of the parties. The first deed of trust was made to secure and save harmless Allen from all loss which he might sustain or incur in consequence of his endorsements, and the notes now sued on, it appears, were part of the notes secured in the said deed. When they were in the hands of Lucas & Co., they operated as en equitable assignment, *pro tanto*, of the property recited in the deed of trust, in favor of Lucas & Co.; and if they were paid off and discharged with the money of Allen, Lucas & Co.'s equity then enured to him, independent of his being the original *cestui que trust*. The plaintiff having received the notes when they were past due, was put upon inquiry, and will be considered as having taken them with full notice of all the infirmities or equities which attached to them.

The first instruction given by the court, on motion of plaintiff, was clearly wrong. It loses sight of the fact, that the plaintiff received the notes as dishonored, and took them with notice of all legal defences which would defeat a recovery; and it singles out certain facts, and tells the jury, if they believe those facts to be true, *prima facie* the plaintiff is entitled to a verdict, when there was a large array of testimony conducing to show an opposite state of things. For a court

15—VOL. XXXVIII.

to instruct a jury, that if they are satisfied of the existence of certain particular things, they shall then find a given verdict, is virtually withdrawing all other evidence from their attention and control.   Instructions should be predicated on the whole testimony, and when they have a tendency to restrict the consideration of the jury to isolated facts, to the exclusion of other facts which are before them in evidence, it is not only a misdirection, but an infringement on the province of the triers of the fact.   The error complained of here was not cured by any counter-instruction given on the other side.   Whether the phrase "*prima facie*" had any tendency to mislead the jury, we cannot tell.   It is much better for courts to instruct juries in plain English, and avoid the use of technical terms.

The next inquiry is, the effect to be ascribed to the acknowledgment of satisfaction on the margin of the record, made by Alexander on the first deed of trust.   He describes himself as assignee of Allen and others, *cestui que trusts* in the deed, and acknowledges to have received full satisfaction of the deed of trust, and then releases the property from all lien on account of the conveyance.   This acknowledgment of satisfaction and release of the lien of the property is made under seal.   It is contended by the counsel for the defendants, that the release, being under seal, not only destroys the lien on the property, but also imports an absolute extinguishment of the debt on which the deed of trust was founded, and that parol evidence is inadmissible to rebut this presumption or conclusion of law; whilst, on the other hand, it is argued, the only effect of entering satisfaction on the record is to extinguish the encumbrance on the property in favor of the real owner, and that the debt is not thereby discharged.

The statute does not require that the entry or acknowledgment of satisfaction should be made under seal, but there is nothing to prohibit a party from resorting to that mode. Where a bond is made not in accordance with the statute, it may still be good as a common law bond, and will be governed by the legal effects and incidents pertaining to it by

the common law. In speaking of the effect of a technical written release under seal, Judge Cowen, in McCrea v. Purmont, 15 Wend. 474, said: " A release cannot be contradicted or explained by parol, because it extinguishes a pre-existing right; but no receipt can have the effect of destroying, *per se*, any subsisting right: it is only evidence of a fact. The payment of the money discharges or extinguishes the debt; a receipt for the payment does not pay the debt—it is only evidence that it has been paid. Not so of a written release; it is not only evidence of the extinguishment, but it is the extinguisher itself." But suppose the release has not this conclusive effect—that it is to be regarded as nothing more than a simple entry of satisfaction ; in other words, a mere receipt. From the language of the statute, it was doubtless contemplated that a mortgage or deed of trust would continue effectual as long as any part of the indebtedness secured by it should remain. The manifest object, scope and design of the provision was to furnish and perpetuate the evidence that the encumbrance no longer existed, and that the constructive notice of the lien by the record should be accompanied by that of the discharge. (See R. C. 1855, p. 1091, § 21.) Now the principle has long been settled, that a receipt simply acknowledging that a debt referred to therein has been paid, is *prima facie* evidence only of such payment; and it is always open to explanation. It is a presumption of law that the debt referred to has been paid, and the receipt is true, though this presumption is disputable in its nature, and the *onus* of proof is on the party attacking its correctness and denying the payment. The entry made upon the margin of the record, unaffected by any proof, is sufficient to show payment of the notes on which the mortgage or deed of trust is founded; and if the acknowledgment is sought to be rebutted or controlled, it can only be accomplished by evidence introduced for that purpose. The plaintiff having obtained the notes after they matured, before she could destroy the effect of the presumption of payment contained in the acknowledgment of satisfaction, it rested on

her to explain it away by competent evidence. The notes, it seems, were delivered to plaintiff by Alexander after the dissolution of the firm of which he was a member, and to which they had previously belonged. It is true, there was no new endorsement; but that can make no difference. The notes had previously been endorsed in blank, and they were transferred with the blank endorsements upon them. After the dissolution of the firm, one partner may endorse the notes and bills of the firm in liquidation, to settle up the partnership business; but he cannot, without the consent of his co-partners, make such endorsement to pay a private debt of his own, or in the transacting of business wholly unconnected with the partnership affairs. Should it turn out in evidence that Alexander took up the notes from Lucas & Co. with his private funds, and thereby made them his own, he had a right to assign and transfer them to plaintiff; but if the money paid for them was partnership assets, they were the property of the firm, and his transfer and delivery of them was without authority.

We see no error in the ruling of the court in excluding the depositions of Valentine and Dunlap; they pertained to matters anterior to the assignment, and were incompetent.

The judgment is reversed and the cause remanded.

Judge Holmes concurs; Judge Lovelace absent.