JOHN H. SIEGRIST ET AL., Appellants, *v.* JESSE ARNOT, Respondent.

### April 5, 1881.

1. One who keeps horses and carriages for hire is not a common carrier, but is bound only to that degree of care which a prudent man, having due regard for his social obligations, would bestow upon such an undertaking.

2. One who undertakes to convey another in a carriage from one point to another, whether for reward or gratuitously, is bound to exert the measure of care and skill appropriate to the employment.

3. Where the driver of a carriage kept for hire, acting within the scope of his employment willingly permits another to ride in the carriage, in the absence of fraud or collusion, the owner of the carriage is liable for an injury received by such person, while so riding, where such injury is occasioned by the driver's negligence.

4. Where the injury is to one other than a fellow-servant, if the injury is caused by the negligence of a servant, the master is liable though he is guilty of no personal negligence.

5. One who, from an impulse of fear produced by the wrongful act of another, in attempting to escape danger acts without good judgment — this cannot be imputed to him as such contributory negligence as will preclude a recovery for such wrongful act of the other.

6. There are no degrees of negligence where the subject of the bailment is human life; but any culpable negligence is, in such case, "gross."

7. Where one undertakes, though gratuitously, to do a thing requiring care and skill, an omission to bestow that care and skill is culpable negligence.

8. It is error to single out and comment upon certain facts, to the exclusion of others, in instructing a jury.

APPEAL from the St. Louis Circuit Court, BOYLE, J.

*Reversed and remanded.*

E. B. SHERZER and MARTIN & LACKLAND, for the appellants : The negligence of the servant renders the master liable, where the servant acts within the scope of his employment. — *Garretzen* v. *Duenckel*, 50 Mo. 104 ; *Winters* v. *Railroad Co.*, 41 Mo. 504 ; *Higgins* v. *Water Co.*, 46 N. Y. 23 ; *Wilton* v. *Middlesex*, 107 Mass. 107. " The duty to carry safely one who is received for carriage is a public duty, and the payment of fare is not necessary to create it," and this whether the carrier be public or private. — *Jaco-*

*bus* v. *Railroad Co.*, 20 Minn. 125 ; *Steamboat* v. *King*, 16 How. (U. S.) 474. One who creates a danger is liable to the person endangered, though the latter, under the fear inspired by the danger, acts unwisely in attempting to avert it, and is injured. — *Nelson* v. *Railroad Co.*, 68 Mo. 595 ; *Schultz* v. *Railroad Co.*, 44 Wis. 638. In the gratuitous carriage of human life any actionable negligence is "gross." The use of the word "gross" is misleading unless explained. — *Harper* v. *Railroad Co.*, 44 Mo. 488 ; *Railroad Co.* v. *Lockwood*, 17 Wall. 357 ; *Railroad Co.* v. *Arms*, 91 U. S. 489 ; *Lemon* v. *Chanslor*, 68 Mo. 840 ; *McPheeters* v. *Railroad Co.*, 45 Mo. 22.

FISHER & ROWELL, for the respondent : " The liabilities of a common carrier do not apply to those who let horses and carriages for hire." — Cooley on Torts, 638. The defendant's contract to loan his carriages was a gratuitous bailment, and subject only to such liability as the law prescribes for that kind of a contract. A gratuitous bailor is only held for gross negligence, which is the omission of care, which even the most inattentive and thoughtless never fail to take of their own concerns. — *Gray* v. *Railroad Co.*, 64 Mo. 49 ; *Lygo* v. *Newbold*, 9 Exch. 302 ; Whart. on Neg., sect. 430 ; *Gartside* v. *Proprietor*, 4 Term Rep. 581 ; *Lamb* v. *Railroad Co.*, 7 Allen, 98 ; *Carr* v. *Railroad Co.*, 14 Allen, 448 ; *Harper* v. *Railroad Co.*, 37 Conn. 272 ; Story on Bail., sects. 6, 374–390. " There can be no contract to transport safely, where there is no contract at all." — *Norton* v. *Railroad Co.*, 15 N. Y. 449 ; Shear. & Redf. on Neg., sect. 264. If a person has no lawful right to be on a vehicle, he cannot recover damages, except for gross negligence, after the latter has notice of the person's presence. — *Ibid.* The defendant's instruction is sustained by *Fink* v. *Potter*, 17 Ill. 406 ; *Ingalls* v. *Bliss*, 9 Metc. 1.

THOMPSON, J., delivered the opinion of the court.

This is an action for damages for injuries to the plaintiff,

Mrs. Siegrist, alleged to have been caused by the negligence of a servant of the defendant. The defendant is a livery-stable keeper in St. Louis. The plaintiff was greatly injured by being thrown from a carriage belonging to the defendant and driven by his servant, under the following circumstances : — Mrs. Garneau, assisted by Miss Hopkins, got up an entertainment, consisting of tableaux, at the Mercantile Library Hall, in St. Louis, for a charitable purpose. The defendant, at the request of Mrs. Garneau, donated several carriages, with their horses and drivers, to convey from their homes and back again, the young ladies and gentlemen who were to perform. Among them was the daughter of the plaintiff. The plaintiff, Mrs. Siegrist, had accompanied her, for the purpose of robing her and preparing her for the parts she was to take in the performance. At the close of the performance, Mr. Joseph Garneau, Jr., at the request of Miss Hopkins, attended and directed the ladies to their respective carriages. Mrs. Siegrist, under his direction, without objection from the driver, got into one of the defendant's carriages, and her little boy took a seat by the driver on the box. While conveying Mrs. Siegrist to her home, the horses ran away, and Mrs. Siegrist either jumped out of the carriage or was thrown out, and received very great injuries, for which the action was brought.

So far as the defendant is personally concerned, his conduct in the matter is entirely blameless ; he acted very generously in donating horses, carriages, and drivers for the object named ; and if he shall be compelled to pay damages for the very grievous injury which happened to Mrs. Siegrist, it will be in obedience to a rule of law which is founded in the soundest considerations of public policy, and which the courts are not at liberty to relax — the rule which, in the dealings of every man with the general public, identifies him with his servant or agent, when the latter is acting within the scope of his employment or agency, and makes him responsible for the negligent injuries done by the latter,

although he himself is guiltless of any fault. In these cases the courts cannot, where there is room for doubt among fair-minded men as to the facts themselves, or as to the inferences of law to be drawn from the facts, decide the controversy; they can only aid in its decision by carrying out, to the best of their understanding, the effort of the law, which is to bring the case to the arbitrament of twelve fair-minded men, who have been properly advised as to the rules of law which they should apply to the facts which they may find to exist.

The learned judge who sat in the trial of this case, did right in submitting it to the jury; but it seems to us that he put it to them on mistaken views of law, for which we feel constrained to reverse the judgment and remand the cause for another trial. We shall notice the instructions given and refused somewhat in detail, as the case must go back for a new trial.

1. We may premise that the employment which the defendant assumed on the night in question was not that of a public or common carrier (Cooley on Torts, 638), and consequently the strict care and diligence which the law exacts of public carriers of passengers does not furnish the measure of his liability. But he was, nevertheless, bound to bestow upon the undertaking which he voluntarily assumed, by himself or by his servants, that degree of care which a prudent man, having due regard for his social obligations, would have bestowed upon it; which, escaping from all definition, means simply, that degree of care which a jury may reasonably say he ought to have bestowed under the circumstances and considering that human life was in his keeping.

2. The circumstance that the defendant undertook the service gratuitously does not make him the less liable, if he would have been liable under the same circumstances had a reward been paid. The governing principle here is, that whenever a person undertakes an employment which re-

quires care or skill, whether he undertakes it for reward or gratuitously, a failure to exert the measure of care and skill appropriate to such employment is culpable negligence, and if damages result therefrom an action will lie. *Steamboat* v. *King*, 16 How. (U. S.) 469 ; *Railroad Co.* v. *Derby*, 14 How. (U. S.) 468 ; *Nolton* v. *Railroad Co.*, 15 N. Y. 444 ; *Jacobus* v. *Railroad Co.*, 20 Minn. 125 ; *Rose* v. *Railroad Co.*, 39 Iowa, 246 ; *Todd* v. *Railroad Co.*, 3 Allen, 118 ; *s. c.* 7 Allen, 207 ; *Railroad Co.* v. *Michie*, 83 Ill. 428.

3. If a person by fraud or stealth gets upon a carrier's vehicle, without the knowledge of the carrier or his servant, and is either killed or injured, albeit through the negligence of the carrier or his servant, no action can be maintained for such death or injury, and this for reasons which are obvious to the understanding of every man. *Toledo, etc., R. Co.* v. *Brooks*, 81 Ill. 245 ; *Chicago, etc., R. Co.* v. *Michie*, 83 Ill. 427 ; *Toledo, etc., R. Co.* v. *Beggs*, 85 Ill. 80. But this proposition need not be enlarged upon ; for there was no evidence from which the jury could have inferred that this was the position of Mrs. Siegrist, nor did the learned judge give the jury any instruction upon such a hypothesis.

4. If a servant, charged by his master with a particular employment, does a particular act in the course of such employment from which damages happen to a third person, the master will be liable to such person, although the servant had no orders to do the particular act, or in doing it went against the master's express orders, provided the act was of such a nature that the master would have been liable if it had been in conformity with his orders. *Philadelphia, etc., R. Co.* v. *Derby*, 14 How. (U. S.) 468 ; *Garretzen* v. *Duenckel*, 50 Mo. 104 ; *Snyder* v. *Hannibal, etc., R. Co.*, 60 Mo. 413. In conformity with this principle, the simple fact that the servant of a carrier violates his duty and invites a person to ride free, without collusion between them to defraud the carrier, will not operate to

deprive the person so riding of an action for damages, if he is injured while so riding through the negligence of the carrier's servant. *Wilton* v. *Railroad Co.*, 107 Mass. 108; *s. c.* 125 Mass. 130; *Pittsburg R. Co.* v. *Caldwell*, 74 Pa. St. 421; *Washburn* v. *Railroad Co.*, 3 Head, 638. But, of course, this is not the rule where the servant so receiving the passenger is manifestly acting without the scope of his authority. *Snyder* v. *Railroad Co.*, 60 Mo. 413. Thus, if the driver of a street-railway car permits a trespassing child to ride on the front platform, and the child is injured through his negligence, an action will lie against the company ( *Wilton* v. *Railroad Co.*, and *Pittsburg R. Co.* v. *Caldwell, supra*); and so where the conductor of a railway train allows a person to ride on the train without paying fare ( *Washburn* v. *Railroad Co., supra*); because the servant is engaged in the general business of carrying passengers for his master. But it is not so where the servants of a railway company are running cars up and down a street, not for the purpose of carrying passengers, and a boy gets on them and is injured. *Snyder* v. *Railroad Co., supra.*

5. The liability of a master to third persons for the negligence of his servant does not depend in any degree upon the personal negligence of the master, although it does depend wholly upon his personal negligence where the injury is done by a servant to another servant engaged in the same common employment. In the former case the rule of *respondeat superior* obtains; in the latter it does not. In the former case the law looks upon the servant as the representative, or *alter ego*, of the master, identified with him; so that, for a negligent injury done by a servant when acting within the general scope of his employment, the master will be liable, although the master himself was perfectly innocent and blameless, or even though, as in this case, the part which the master took in the transaction was highly commendable. This is elementary law.

6. A person who, from an impulse of fear produced by the wrongful act of another, acts erroneously, and, in consequence of such erroneous act, receives an injury which he would not have received had he not so acted, will not be precluded from recovering damages on the ground of contributory negligence ; for it does not lie in the mouth of the defendant to say to the plaintiff, " You shall not have damages because you did not act with reasonable care," if the misconduct of the defendant paralyzed the nerves or destroyed the volition of the plaintiff, so that he became incapable of acting with that care which persons under other circumstances employ. But, on the other hand, if the act of the plaintiff resulted from a rash apprehension of danger which did not exist, it may be set up against him as contributory negligence. *Stokes* v. *Saltonstall*, 13 Pet. 181, 193 ; *Jones* v. *Boyce*, 1 Stark. 493 ; *Buel* v. *Railroad Co.*, 31 N. Y. 314, 318 ; *Frink* v. *Potter*, 17 Ill. 406.

Let us test, by the foregoing propositions, the instructions which were given and refused. The plaintiff offered the following, all of which were refused : —

1. " If the jury believe from the evidence that Mrs. Siegrist attended the performance at Mercantile Library Hall, assisting her daughter in dressing for said performance, and that, at the close of the same, she came down to the door and in good faith entered the defendant's carriage along with certain performers, without objection from the defendant or his driver, under the impression and belief that she had a right to ride along with said performers, and neither the defendant nor his driver, nor any one for them, gave her notice that said carriage was intended only for the actual performers, then the obligation of the defendant to carry her safely attached, and the defendant is liable, under the law, for the negligence of his driver in the performance of that duty.

2. " If the jury believe from the evidence that the carriage belonged to defendant and was driven by his driver,

and that it was furnished by defendant for the purpose of carrying performers to and from Mercantile Library Hall, and that Mrs. Siegrist, one of the plaintiffs, was, without objection made by defendant or his driver, received into said carriage on the night of the accident at the same time said carriage received said performers for conveyance from said hall, then the jury is instructed that the defendant is answerable for the negligence of said driver in carrying and delivering the plaintiff, as being a negligence within the scope of his employment as a driver of defendant's carriage.

3. " The jury is instructed that the assent or permission of defendant for plaintiff to enter and ride in his carriage, need not necessarily be an express assent or permission, but that it may be contained in the acts and silent acquiescence of the defendant or his agents.

4. " If the jury find from the evidence that Mrs. Siegrist, with the knowledge of defendant or his driver, was received into defendant's carriage, to be taken to her residence, without objection, then this is evidence tending to prove that Mrs. Siegrist had the defendant's assent to use and ride in his carriage.

5. " If the carriage and horses belonged to defendant, and the driver was in the pay of defendant, and not in the pay or under the control of anyone else, then the driver was the servant of defendant, and the defendant is answerable for all negligence committed by him within the scope or course of his driving.

6. " If the jury believe from the evidence that defendant furnished his carriage and driver for the benefit of performers at the entertainment given in the Mercantile Library Hall, and that Mrs. Siegrist came out of said hall and was invited to a seat in the defendant's carriage by the same person who was authorized to seat the performers in said carriage, and who did seat the other occupants in said car-

riage, then Mrs. Siegrist was not a trespasser, but was in such carriage lawfully.

7. " If the jury believe from the evidence that the defendant intrusted a list or memorandum to his driver for the purpose of instructing him as to the persons he was to admit into his carriage, and that said driver, in violation of said instruction, admitted Mrs. Siegrist into said carriage, and did not notify her, at the time of so admitting her, of any list or instructions to the contrary, and she was admitted without knowledge on her part, of said list or instructions, entered in good faith, believing that it was with the assent of the owner of said carriage, then she was not a trespasser, but was lawfully in said carriage.

8. " If the jury believe from the evidence that Mrs. Siegrist was received into defendant's carriage as indicated in instructions numbered 1 or 2 for the plaintiff, to be conveyed from the Mercantile Library Hall to her residence, and that by reason of the incompetency of defendant's driver, proceeding from drunkenness, the horses ran away with said carriage, and while so running away Mrs. Siegrist fell or was thrown from said carriage, and was by said fall injured, without negligence of her own contributing immediately thereto, and said incompetency of said driver was known to defendant, or could have been known by the exercise of ordinary diligence, then they must find for the plaintiff.

9. " The jury are instructed that a carrier of persons, whether a private or common carrier, is bound to carry safely and carefully any person received for carriage. This is a public duty, and is not changed by the fact that no fare or pecuniary consideration was to be paid by the person carried.

10. " If the jury believe from the evidence that Mrs. Siegrist was received into defendant's carriage as indicated in instructions numbered 1 or 2 for the plaintiffs, to be conveyed from the Mercantile Library Hall to her residence, and that by reason of the incomptency of defendant's driver, proceeding from drunkenness, the horses ran away with said

c.... ge, and while so running away Mrs. Siegrist fell or was thrown from said carriage, and was by said fall injured without negligence of her own contributing immediately thereto, then they must find for the plaintiff."

We should not reverse the judgment for the refusal to give the first two of these instructions, for the reason that the concluding words of each are so framed that they might possibly mislead the jury into the belief that the court considered the fact of negligence on the part of the driver established. In instructing a jury it is error for the judge to assume as proved a fact which the evidence leaves in dispute or doubt; nor should he so frame an instruction as that the jury may fall into the error of inferring that e wishes them to consider such a fact as proved. There are many cases deciding this in various ways. *Peck* v. *Ritchy*, 66 Mo. 114; *Thompson* v. *Botts*, 8 Mo. 710; *Chouquette* v. *Barada*, 28 Mo. 491; *Merritt* v. *Given*, 34 Mo. 98; *Moffatt* v. *Conklin*, 35 Mo. 453. With the qualifying words, "if the jury find that the driver was guilty of negligence," or other such words, these instructions would not be subject to criticism. The third, fourth, sixth, and seventh instructions were apt and proper under the evidence in the case. The fifth laid down to the jury the correct test by which to determine whether the driver was acting at the time as the servant of the defendant or not. *Fink* v. *Furnace Co.*, *ante*, p. 61. The eighth and tenth could not certainly be objected to by the defendant. The ninth was a correct statement of the law embraced in the second proposition of law above laid down. The plaintiff had a right to have all these instructions, except the first and second, given to the jury, unless the learned judge properly presented to them the law of the case in the instructions which he gave of his own motion, or at the request of the defendant. This, in our judgment, he did not do. He gave of his own motion the following: —

"The jury are instructed that if they believe from the

evidence that the carriage was furnishsd gratuitously by the defendant, uuder an agreement with him that it was to be used only in the conveyance to and from the Library, of persons who were to perform in the tableaux mentioned in the evidence, and if they further believe that the plaintiff, Mrs. Siegrist, was not one of such performers, and that she entered said carriage without the knowledge or consent of the defendant, then the defendant is not liable for any injuries she may have sustained while being driven in said carriage, even though the driver of said vehicle had undertaken to drive her to her home, unless the jury should further find that such injuries were occasioned by gross carelessness on the part of the defendant; and, in order to find the defendant liable on account of such carelessness, the jury must believe from the evidence that at the time of the accident the driver of said vehicle was so intoxicated as to be unfit to manage the team intrusted to him, and that this fact was known to the defendant, and not known to said plaintiff; or that the habits of said driver, either as to drunkenness or carelessness, were such as to render him an unsafe or unfit person to be placed in charge of a vehicle, and that such habits were known to the defendant at the time; and, further, that the injuries received by said plaintiff were occasioned by the drunkenness or carelessness of said driver."

This instruction was clearly erroneous. Under it the jury could not have done otherwise than find for the defendant, for it made the gross carelessness of the defendant, not that of his servant, the test of liability. In the first place, there are no degrees of negligence known to the law where the subject of the bailment is a human life. Any negligence under such circumstances is culpable, and may well be deemed gross. *Steamboat* v. *King*, 16 How. (U. S.) 469. This will at once be seen if we attempt to apply the definition of gross negligence which has been given by our Supreme Court: "That omission of care which even the

most inattentive and thoughtless never fail to take of their own concerns." *Gray* v. *Packet Co.*, 64 Mo. 49. Can it be said for a moment that, where one has voluntarily taken a human life into his custody, although without reward, he is discharged from liability if he bestows in the preservation of that life no more than that degree of care which even the most inattentive and thoughtless take of their own concerns? Such a doctrine would greatly lessen the sanctity of human life. I can find no case in any book which supports it. The defendant was under a higher obligation of care towards the wayfarers on the public streets, towards whom he stood in no relation of confidence, as he did towards the plaintiff. The correct principle applicable to the case is this, that "if a man gratuitously undertakes to do a thing to the best of his skill, when his situation or profession is such as to imply skill, an omission of that skill is imputed to him as gross negligence." *Shiells* v. *Blackburne*, 1 H. Black. 158 ; *Wilson* v. *Brett*, 11 Mee. & W. 113 ; *Nolton* v. *Western R. Corp.*, 15 N. Y. 444. This must, however, be said with the qualification that the word "gross," in this sense, is not used as expressing the antithesis of a certain defined degree of care. It is either used in the sense of "culpable" or "actionable," or else it is a mere epithet.

Nor do we agree with the explanation in the latter part of this instruction, of what would amount to gross negligence of the defendant under the facts in evidence. Under that explanation, if the jury could have found from the evidence that the driver got drunk between the time when he left his master's sight (say at seven or eight o'clock) and the time when the entertainment broke up (say at eleven o'clock), and the master knew nothing of it, and the man was not in the habit of getting drunk, the plaintiff could not recover. This entirely ignores the doctrine of *respondeat superior*, as we understand it, and makes the test of liability the personal negligence of the defendant.

This is not so. The test of liability is the same as though the defendant had personally been sitting on the driver's box, in the same condition as that in which some of the witnesses say this servant was, if such a thing could be imagined of him.

The learned judge then gave, at the request of the defendant, the following instructions : —

" The court instructs the jury that if they find from all the evidence and circumstances in this case, that the team in question ran away, and caused the injury complained of, from any other cause than the drunkenness or incapacity of the driver, they will find for the defendant.

" The court instructs the jury that if they believe from the evidence and circumstances in this case, that Mrs. Siegrist jumped or got out of the carriage in question, and was injured in consequence of doing so, and that she would not have been injured if she had remained in the carriage, and that a person of ordinary prudence and care would have remained in said carriage at the time she so jumped or got out, then the plaintiff cannot recover in this case."

The first of these instructions is obnoxious to a rule which has often been animadverted upon by the Supreme Court of this State. It is this, that the judge must not single out certain facts, leaving out of view other essential facts, and tell the jury that if they find such facts to be true they must find for one party or the other. *Chappell* v. *Allen*, 38 Mo. 213, 220 ; *Raysdon* v. *Trumbo*, 52 Mo. 574. There was evidence tending to show that, although the driver may have been both competent and sober, yet the accident may have resulted from his personal negligence ; and the instruction left this evidence out of view, and excluded it from the case as effectually as though it had not been given. It was therefore erroneous.

The second of these last instructions did not correctly state and apply the sixth proposition of law above stated. What a person of ordinary prudence would have done is not,

of itself, a proper test, when applied to a case of a lady alone in a vehicle in the night-time, and the horses running violently away. The only testimony which speaks on this point is that of the plaintiff herself, and it is to the effect that she was paralyzed to such an extent as to be unconscious and incapable of volition. She does not remember whether she jumped out or was thrown out. She has no recollection of anything which took place after the horses commenced running away. It was sufficient, — to adopt the language of the Supreme Court of the United States in the authoritative case of *Stokes* v. *Saltonstall*, 13 Pet. 181, — if she were placed, by the misconduct of the defendant, in such a situation as compelled her to adopt the alternative of a dangerous leap or to remain at certain peril ; and if that condition was occasioned by the fault of the defendant, the action may be supported. On the other hand, if the plaintiff's act resulted from a rash apprehension of danger which did not exist, and the injury which she sustained is to be attributed to rashness and imprudence, she is not entitled to recover.

Of course the learned counsel will not understand us as intimating any opinion as to whether or not this is, upon the facts, a case for the recovery of damages. It may well consist with the evidence that this was one of those unavoidable accidents which sometimes overtake the most skilful, careful, and sober driver and the most steady horses, on the best roads. Some trifling object, not seen by the driver himself, — a cat running across the street, or a paper rustling in the wind, — might have been sufficient to produce the accident in this case, without any negligence whatever on the part of the defendant or the driver. Where, as in this case, there is any substantial evidence entitling the plaintiff to go to a jury, these questions lie wholly outside of our province. We have nothing to do except to see that the case is put fairly to the jury under the applicatory principles of law, as we understand them,

and that, if the verdict is returned for the plaintiff, it is neither so great nor so little as to indicate passion or prejudice. Discharging this duty, as we understand it, we reverse this judgment and remand the cause for a new trial. All the judges concur.