CHARLES COMPTON, Appellant, v. JAMES A. BAKER, Respondent.

St. Louis Court of Appeals, February 5, 1889.

1. **Forcible Entry and Detainer:** PLAINTIFF'S POSSESSION. In an action of forcible entry and detainer, an instruction that, although the plaintiff was in actual possession at the time of the alleged entry yet the verdict should be for the defendant, unless the jury found that the plaintiff's possession was a lawful one, is erroneous, as being calculated to mislead the jury.

2. **Instructions:** AMBIGUITY. An instruction containing a hypothesis of the defendant's non-liability unless the plaintiff was in possession "exclusive of Black," where the testimony connected with the possession two persons of that name, should have been refused for ambiguity as to the person intended.

3. **Forcible Entry and Detainer:** DELIVERY OF POSSESSION. No delivery of possession is effected by the delivery of a key which the recipient cannot make available for an entry into the premises, by reason of other fastenings which he is unable to control.

4. **Forcible Entry and Detainer:** EXCLUSIVE POSSESSION. The plaintiff having securely barred and fastened against all other persons every opening about the premises in controversy, and having refused access thereto upon demand made by one having authority from a joint owner with the plaintiff, must be considered as asserting and holding the exclusive possession, and this cannot be modified into a joint possession of himself and another, by the mere fact that he has recently done business as a partner with such other person in the same building.

5. **Instructions:** IGNORING TESTIMONY. An instruction which singles out a particular fact as being insufficient to prove a certain matter in issue, and omits all reference to other facts in evidence having a tendency to establish the same matter, is erroneous. Instructions touching a defined issue should be founded upon all the testimony affecting that issue.

*Appeal from the Ozark Circuit Court.*—HON. J. F. HALE, Judge.

REVERSED AND REMANDED.

*W. J. Orr,* for the appellant.

Defendant's first instruction tells the jury to pass upon the lawfulness of plaintiff's possession, which is error. *McCartney v. Alderson,* 45 Mo. 35 ; *Michau v. Walsh,* 6 Mo. 346; *Krevet v. Myer,* 24 Mo. 110 ; *Beeler v. Cardwell,* 29 Mo. 72. In view of the fact that defendant had bought the house, it was natural for a jury to conclude that plaintiff's possession was not lawful ; and especially so when they are told that actual possession is not sufficient. Defendant's fourth instruction comments upon a part of the testimony and leads the jury to infer that locking the door was the only act of plaintiff indicative of possession, and that not sufficient. Defendant's third instruction is not based upon the facts in the case. *State v. Bailey,* 57 Mo. 131 ; *Gist v. Loring,* 60 Mo. 487 ; *Henschen v. O'Bannon,* 56 Mo. 289 ; *Raysdon v. Trumbo,* 52 Mo. 35 ; *Ellis v. McPike,* 50 Mo. 574. Now all the witnesses agree that Compton and Jas. Black were partners in the business but not in the house, that neither of the Blacks was in the actual possession of the house after Compton barred them out. Again, Baker admitted that his entry was forcible, and never denied while on the stand that he told plaintiff's witness that he entered by virtue of his title alone. What effect did the turning over the key by one not in possession have? If Baker's deed was worth anything, it gave him the right to the exclusive possession, but some one else was in possession, and intended to hold for himself. Baker tells who that was, when he says he went to see Compton after trying to get in with his key, and Compton refused to give up his key, thereby refusing to recognize Baker either as tenant in common or as the legal owner of the whole. One tenant in common may oust his co-tenant and hold adversely to him. *Hoffstetter v. Blattner,* 8 Mo. 282 ; *Marfield v. Lindell,* 30 Mo.

272.    From the evidence it is clear that Compton was in possession claiming that the sale to Baker was void; that Baker forcibly took possession and attempted to justify under that deed, and the jury under defendant's instructions were led to believe that they were to pass upon the lawfulness of plaintiff's possession.

BRIGGS, J., delivered the opinion of the court.

This is an action of forcible entry and detainer begun before a justice of the peace in Ozark county, on the twenty-first day of April, 1887.    There was a judgment for plaintiff before the justice, from which defendant appealed.    On a trial anew in the circuit court, there was a verdict and judgment for defendant.    Plaintiff brings the case to this court by appeal.    The only complaint made in this court pertains to the the  defendant's instructions.

The complaint alleges that on the seventh day of February, 1887, plaintiff was in the lawful possession of the property in dispute, to-wit,  a store-house and the land on which it was situated in Ozark county; that on said day, defendant forcibly took possession of the premises, and wrongfully detained the same from plaintiff.    There is no radical conflict in the testimony.    The facts, as established by the evidence of both sides, are substantially as follows:  "The store-house and land connected therewith belonged to plaintiff and one W. C. Black.    Prior to December, 1886, plaintiff and one James Black had been engaged as partners in the mercantile business, and had occupied this store-room as a place of business.    It does not appear that they were partners in any other business.    James Black was a son of W. C. Black.    About the first day of December, 1886, the sheriff of Ozark county, under writs of attachment, levied on all goods of the firm of Compton & Black. The sheriff seems to have taken possession of the goods and store-room and retained possession of the latter until

he had sold out the entire stock. After this had been done, and some time prior to the alleged forcible entry by defendant, the sheriff delivered to James Black the key to the front door of the store-room and gave to plaintiff the key to the side door. Thereupon the plaintiff entered the store-room by the side door, and nailed up the front door and also nailed planks across the window. Plaintiff had some goods in the store, which he had bought at the sheriff's sale. These goods plaintiff left in the room. James Black says, that after the sheriff gave him the key to the front door he attempted to effect an entrance into the building by unlocking the front door, but he was unable to do so because the door was fastened from the inside. It appears that one Vivion had a mortgage on the premises given by plaintiff and W. C. Black the other owner, and after James Black had failed to get into the house, he delivered the key in his possession to Vivion. The latter sold under the mortgage, and defendant purchased and Vivion delivered to defendant the key that he had gotten from James Black. Defendant attempted to get into the store-room by means of the key, but could not do so, on account of the fastenings on the inside. Defendant then went to see plaintiff, who was at work a few hundred yards from the building; and asked him for the key to the side door. Plaintiff refused to give it to him. A day or two after this, defendant and one Nelson knocked off the pieces of plank from the window and Nelson entered the house, removed the inside fastenings from the door, and defendant immediately took possession. Plaintiff testified that at the time of the forcible entry by defendant, he was in the exclusive possession of the property. That he had nailed up the front door and window for the purpose of preventing any one else from taking possession, and that he refused to surrender the possession to defendant because he had been advised by his counsel that the sale under the mortgage was void. One of

plaintiff's witnesses testified that he was in the house with plaintiff after the sheriff had delivered to plaintiff the key, and he found the window and front door nailed up. He also testified that defendant had said, "that he assumed all responsibility for the act of Nelson in forcing an entrance into the building." Several of defendant's witnesses testified that they lived near the store-room and that they never saw plaintiff inside of the building after the sheriff had delivered up the keys. James Black said that he was not inside of the building after the sheriff delivered to him the key; that, as the representative of his father ( W. C. Black ), he consented for defendant to take possession. That at the time the sheriff took possession, witness had a "bed and some other things in the house, which were left there after the sheriff's sale, and remained in the building until the defendant took possession."

This statement of the facts we thought necessary to make, in view of what we will hereafter say concerning the instructions complained of. The instructions which plaintiff says ought not to have been given are as follows:

"1. That even if the jury should find that the plaintiff was in the actual possession of the premises at the time of the alleged entry by the defendant, unless they further find that such possession of plaintiff was a *lawful* possession, they should find for the defendant."

"2. The court instructs the jury that before the plaintiff can recover in this action it devolves upon him to show by a preponderance of the testimony that he was in the exclusive possession of the premises at the time of the alleged entry by the defendant, and unless the jury are satisfied from the evidence that plaintiff was in possession of the premises at the time of the alleged entry by defendant, exclusive of Black, they should find for the defendant."

"3. The court instructs the jury that if they believe from the evidence that Black and Compton were partners and in joint possession of the house and that Black put the defendant in the possession of the house, then Compton would be bound by the acts of his partner, Black, and the jury should find for the defendant."

"4. The court instructs the jury that the fact that the plaintiff locked the house does not of itself constitute possession."

The first instruction was calculated to mislead the jury. The court ought to have explained to the jury what was meant by the "lawful possession of defendant," *i. e.*, that the term did not involve an investigation as to the validity of plaintiff's possession based on his title, but only an inquiry as to whether plaintiff was in the actual possession of the property and that his possession was peaceable. The court had instructed, on motion of plaintiff, in a general way, that the phrase "lawfully possessed," meant "peaceably possessed," yet we think, that notwithstanding plaintiff's instruction, defendant's instruction was so framed and worded as to lead the jury to believe that plaintiff, in order to maintain the action, must have been *rightfully* or *legally* in possession of the premises. *King v. Gas Co.*, 34 Mo. 34.

In the second instruction, the jury was told that the verdict must be for defendant, "unless the jury was satisfied from the evidence that plaintiff was in the possession of the premises in dispute, exclusive of Black." The evidence in the case connects both James Black and W. C. Black with the possession of the property. Which one did defendant refer to in this instruction? For this reason alone, the instruction ought to have been refused, or the instruction so modified as to leave no question as to which one of the Blacks was intended. But the instruction is bad,

whether we consider it as referring to the one or the other. If the instruction referred to James Black, there is no testimony of any possession by James Black at the time of the forcible entry by defendant. The firm of Compton & Black *had* been in possession of the property as tenants of the owners, viz., plaintiff and W. C. Black. This firm was only engaged in the mercantile business. After the sale, the sheriff delivered the key to the side door of the store-room to plaintiff and the key to the front door to James Black. There is no testimony that the firm after the sale had resumed business, but on the contrary all the testimony points to the conclusion that the firm had entirely ceased to do business and had practically, if not formally, dissolved. James Black says that after he received the key from the sheriff, he attempted to get into the house by means of his key, but could not do it. Some one had barred the front door. All the evidence shows that this had been done by plaintiff. Under such circumstances, the delivery of the key to James Black did not have the effect of putting James Black into the *actual joint possession* of the property with plaintiff. Nor could we say that plaintiff intended to hold possession of the house for the joint use and benefit of himself and former partner, because the firm of Compton & Black had gone out of business and had practically dissolved. If the instruction referred to W. C. Black, the other owner of the property, then there is no testimony on which the instruction can be predicated. Plaintiff says that by barring the door and nailing up the window he intended to and did take the *exclusive possession* of the house. But suppose this statement of plaintiff is not to be believed, and that the presumption is to prevail that the plaintiff's possession was intended to be for the benefit of his co-tenant, as well as himself, yet defendant's own testimony shows that the key delivered to him by James Black, as agent for W. C. Black, would

not admit defendant into the house, and that defendant then went to plaintiff and demanded the key to the side door which plaintiff refused to surrender; thereby recognizing the fact that plaintiff was in the actual possession of the property. Now, if we concede that defendant had the consent of W. C. Black to take possession, and that plaintiff held possession for W. C. Black and himself, yet plaintiff had the right to object to the change of the joint possession of himself and co-tenant. He might be willing to hold the property for himself and co-tenant, and yet object to the entry of defendant, even though he had consent of W. C. Black to do so. Plaintiff did object to this and in spite of the objection defendant took forcible possession of the property. Plaintiff, by refusing to surrender his key to defendant, which was the only key to the building by which an entrance could be effected, asserted exclusive possession of the property in himself. In any view we may take of the instruction, it is wrong and ought not to have been given.

Our remarks touching the second instruction indicate our views as to the validity of the third instruction given on motion of defendant's counsel.

The fourth instruction is also bad. It singles out only one fact on which plaintiff relied to prove his possession, and told the jury if this fact was found to be true, it did not of itself constitute possession of the premises in plaintiff. In addition to locking the side door of the house, plaintiff's testimony tended to prove that he barred the front door, nailed planks across the window and left a lot of his goods in the house. These latter facts were not mentioned in the instruction and were indicative of an intention on plaintiff's part to hold the actual possession of the premises. The legal objection to the instruction is that it singles out a particular fact and instructs the jury as to its weight or probative force. Instructions touching a certain issue should be founded

on all the testimony on that issue. *Chappell v. Allen*, 38 Mo. 213; *Raysdon v. Trumbo*, 52 Mo. 35; *Seigrist v. Arnot*, 10 Mo. App. 197. The error in this instruction was not cured by the other 'instructions in the case. *Henschen v. O'Bannon*, 56 Mo. 289.

As this case will have to be re-tried, we will suggest that the only question to be determined in this case is, was the plaintiff at the time of the forcible entry by defendant in the actual and peaceable possession of the premises in question, and was this possession *exclusive as to defendant.*

The judgment will be reversed and the case remanded. All concur.