GUMZ, Administratrix, vs. THE CHICAGO, ST. PAUL & MINNE-
APOLIS RAILWAY COMPANY.

*September 1 — September 27, 1881.*

RAILROADS: NEGLIGENCE: COURT AND JURY. *(1) Liability of railroad
company for injury to its servants. (2) Negligence: choice of alterna-
tives in imminent danger. (3) Nonsuit.*

1. A railroad company is liable for injuries suffered in this state by one of its
   agents or servants from negligence of any other agent or servant thereof,
   without contributory negligence on his part (sec. 1816, R. S.); and in
   case of his death from such injury, the action may be brought by his
   personal representative.
2. Where there are two or more lines of action, any one of which may be
   taken, and such an agent, with ordinary skill, in the presence of immi-
   nent danger, is compelled immediately to choose one of them, and does
   so in good faith, the mere fact that it is afterwards ascertained by the
   result that his choice was not the best means of escape, is not sufficient
   to charge him with negligence.
3. In this action for injuries from negligence, the court did not err, upon the
   evidence (stated in the opinion), in *nonsuiting* the plaintiff.

APPEAL from the Circuit Court for *Juneau* County.

The case is thus stated by Mr. Justice CASSODAY:

"This is an action under the statute to recover damages for
the alleged negligent killing of the plaintiff's intestate.
About 11 o'clock in the forenoon of April 24, 1879, the sec-
tion foreman of that portion of the defendant's road between
Elroy and Camp Douglas, and six men, including the intestate,
all in the employ of the defendant, having just completed
some repairs just south or east of trestle No. 3, about three
miles north of Elroy, proceeded upon their hand-car across
that trestle, towards Camp Douglas, to make repairs further
up the line. When about 300 feet north of the trestle they
discovered a 'wild' or 'special' freight train, about twenty
rods distant, coming towards them from the opposite direction
around a curve and through a cut, so that at first they could
only see the top of the smoke-stack. The section foreman im-

mediately applied the brake, stopped the hand-car, and he and all his men got off, and he immediately commanded his men to shove or push the hand-car back, or, as some of the witnesses state in portions of their testimony, " run the hand-car back," or, as the section foreman in one place states, "push the car back, and save her if you can, if you can't, save yourselves; " and thereupon the intestate and his nephew, Charles Gumz, jumped upon the hand-car, while the section foreman and four of the men gave it a push down the track, when the foreman immediately ran, upon the engineer's side of the track, some sixty to ninety feet towards the coming train, swinging his hat in his hand. It appears that the train was running, at the time it was discovered, from ten to twelve miles an hour, and that when it was about 300 feet from the hand-car, the fireman called the attention of the engineer of the train to the hand-car, and he immediately looked and saw the foreman coming with his hat in his hand, and so called for brakes and pulled the engine open, reversed it, and ran her on sand, and then saw the foreman about ninety feet ahead of the engine, and the hand-car about ninety feet beyond him, and the men pushing it. When the section foreman left the hand-car, the intestate and his nephew, Charles Gumz, were on the hand-car pumping it back, while two of the men, Torrelson and O'Neil, were pushing the hand-car on one side, and two of the men, William Gumz and Munger, were pushing the hand-car upon the other side. Torrelson and O'Neil first left the hand-car and went off one side of the track. Munger and William Gumz continued on the side of the hand-car until they got about three rails, or ninety feet, from the trestle, when they let go, and told the persons on the hand-car to jump off. The nephew of the intestate, young Charles Gumz, remained on the hand-car, with his back towards the train, pumping, until about the length of one or two rails from the trestle, when he jumped off, and at the same time told the intestate to jump off. The trestle was about sixty-five feet long.

About the time the hand-car reached the trestle, the intestate let go the handles, but kept his hands going up and down, and when from three to ten feet on the trestle, and when the engine was still about ten feet from the hand-car, he turned partly around and jumped or fell sideways into the trestle, between the rails of the track, and the hand-car passed over him, and also the engine, until the drivers were upon him; the front of the engine, when stopped, being about the middle of the trestle, and the end of the hand-car on the front of the pilot.

" The intestate was at the time fifty-four years of age, and left a wife and children. The fill or grade from the place where the hand-car was started back, varied in height from two to ten feet. At the place where the hand-car started back, the track was about two feet above the adjoining grade; and at the place where young Charles jumped off, it was three or four feet down the bank to the bottom; and just before reaching the trestle-work, the grade was six or seven feet down to the level. There was some evidence tending to show that when they first saw the train some of the men suggested to the section foreman that they had better put the hand-car off the track, which he declined to do.

" At the close of the testimony on the part of the plaintiff, the defendant moved for a nonsuit, on the ground that the plaintiff had not established a cause of action by proof, and that the proofs showed that the intestate was guilty of contributory negligence, which motion the court refused to grant. At the close of the testimony the same motion was renewed by the defendant and granted by the court; and from the judgment entered upon the order, this appeal was brought."

*J. W. Lusk*, for the appellant, contended that the question of defendant's negligence, and that of contributory negligence of the deceased, should have been submitted to the jury. "A nonsuit should not be granted except where the evidence, on the .most favorable construction for the plaintiff, will not

justify a verdict in his favor. All which the evidence in any degree tends to prove must be deemed as fully proved." 4 Ohio St., 645; *Schomer v. Hekla F. Ins. Co.*, 50 Wis., 575; *Sutton v. Wauwatosa*, 29 id., 33; *Imhoff v. C. & M. Railroad Co.*, 22 Wis., 684; *Langhoff v. M. & P. du C. Railway Co.*, 19 id., 497; *Ewen v. C. & N. W. Railway Co.*, 38 id., 628; *Houfe v. Fulton*, 29 id., 296; *Dorsey v. P. & C. Construction Co.*, 42 id., 600. If the facts are fairly debatable or rest in doubt, a nonsuit is improper. *Gower v. C., M. & St. P. Railway Co.*, 45 Wis., 183; *Bessex v. C. & N. W. Railway Co.*, id., 483; *Copp v. G. A. Ins. Co.*, 51 id., 637.

For the respondent there was a brief by *John C. Spooner* and *C. L. Catlin*, and oral argument by *Wm. F. Vilas:*

1. The cases cited for the appellant are cases in which a nonsuit was granted or denied upon the plaintiff's own showing, and before any evidence had been introduced by the defendant. Even in such cases, however, it was held in *Hunter v. Warner*, 1 Wis., 141, that if upon the evidence submitted it would have been the duty of the court to set aside a verdict for the plaintiff, as being against the evidence, it was its duty to grant a nonsuit. This view has been repeatedly affirmed in later decisions. The nonsuit in this case, however, was granted after defendant's evidence was in. That practice has been recognized and approved by this and other courts, and is similar in its nature to the practice of directing a verdict in favor of the party who may be entitled thereto. Either course is proper where there is either no evidence which would justify a verdict in plaintiff's favor, or such a clear and decided preponderance of evidence against him as would require the court to set aside a verdict in his favor. Proffatt on Jury Trials, § 353 and cases there cited; *Rudd v. Davis*, 3 Hill, 387; *Sutton v. Wauwatosa*, 29 Wis., 21; Opinion of DIXON, C. J., in *Cutler v. Hurlbut*, id., 152; *Lawrence University v. Smith*, 32 id., 587; *Steffen v. C. & N. W. Railway Co.*, 46 id., 259. The rule that where the evidence would not justify

a verdict for the plaintiff a nonsuit should be granted, has been repeatedly affirmed by this court in recent decisions. *Flannagan v. C. & N. W. Railway Co.*, 50 Wis., 462; *Schomer v. Hekla F. Ins. Co.*, id., 575; *McLinden v. Wentworth*, 51 id., 170.

CASSODAY, J. By section 1816, R. S., every railroad corporation is made liable for all damages sustained by any agent or servant thereof by reason of the negligence of any other agent or servant thereof, without contributory negligence on his part, when sustained within this state. In case the injury causes death, such right of action is preserved, by sections 4255–6, R. S., to the personal representative of such deceased person. There is no claim here of any negligence on the part of any one connected with the running of the train. There is no claim of any negligence by reason of the section foreman being on the track with his hand-car and men at the time and place in question, nor by reason of his failing to act or command promptly, and execute with vigor. The only negligence imputed to any agent or servant of the railroad company is the nature of the command given by the section foreman. It is claimed that it would have been safer to have put the hand-car off the track, or to have shoved it back without any one getting onto it, than to do as they did. It is also claimed that there was some evidence tending to show that the command was to "run" the hand-car back, which, it is claimed, meant to get onto it and pump it back, and that from such command the jury had the right to infer negligence. We have great doubt whether the evidence would justify a special verdict that such command was in fact given; but for the purposes of this case we shall assume that it was.

The emergency presented for choice some one of at least four different lines of action. The command might have been to put the hand-car off the track. It might have been to let it remain on the track, and for the men to take care of them-

selves. It might have been to push it back as far as they could without endangering themselves, and without getting onto it. Or the command might have been for some to get on and pump, and the balance push as they did. Which of these several lines of action was most judicious? The danger was imminent. By calculation, it would seem that the speed of the coming train was such, if not slackened, as to bring it upon the hand-car in less than half a minute. Whether the speed would thus be slackened was a fact which the section foreman could not know, but at most could only conjecture. In any event, the attempt to slacken was certain to be postponed until the engine came out of the cut around the curve, and out from behind the embankment, sufficiently to enable the engineer to take in the situation and comprehend the danger. But he might not at that moment notice the hand-car. If he did not, a few seconds would bring the engine to a point where all attempts to materially slacken the speed would be futile. The peril was not only immediate, but great; not so much to the lives of the section foreman and his men, for they at the moment were all on the ground, and we must assume that each had eyes, ears, mind, and the power of locomotion, with the natural instincts of self-preservation, and hence would be sure to escape, as it does not appear that there was, at the place where they were, any obstacle to prevent. There was, of course, danger to the hand-car, and counsel urge that that was the only danger in the mind of the section foreman at the time of giving the command; but we cannot shut our eyes to the fact that such danger was merely to property, and that, comparatively, of but trifling value.

It would seem preposterous to assume that the mind of the section foreman was wholly engrossed with the project of saving the hand-car, and that he did not comprehend the inevitable danger, if not obviated by him and his men, to the swiftly-coming train and the lives of the men upon it, having but very little opportunity of escape. These are some of the

thoughts which naturally, and, as we think, necessarily crowded themselves upon the consideration of the section foreman at the moment when he was required to decide which of the lines of action indicated he would pursue. There was no time for deliberation. The emergency demanded an immediate decision. A few seconds of delay in giving the command, and the time for executing it would be past. There was no hesitation. The decision of the section foreman was immediate, his command prompt, and the commencement of its execution speedily followed, while he did what he could to arrest the attention of the engineer to the peril of the situation, and in that he seems to have been successful. The hand-car was started back towards the trestle, about 300 feet distance, with two men at the pump and two pushing at either side. The intestate was at the pump, with his face towards the coming engine, and, seemingly, in the best position of any of the section men to take in the danger of the situation, and the necessity rapidly being forced upon him to make his escape. There was, apparently, no difficulty in his seeing Torrelson and O'Neill leave the hand-car on the one side, and then Munger and his brother William leave the hand-car on the other, when the latter told him and his son to jump from the hand-car. So, a little later, he was, seemingly, in a situation to see his nephew jump from the hand-car, and at the same time hear his halloo for him to do the same, when there were still from thirty to sixty feet between the hand-car and the trestle. Thus, while the hand-car was passing over the 300 feet of track, upon a grade no part of which was so elevated as to endanger life by jumping, the intestate, apparently, had not only warning, but time for deliberation as to whether he would jump or remain, with the seeming capacity to do either. Just why he concluded to remain, can only be conjectured. Certainly there was nothing in the command of the section foreman which required him to remain upon the hand-car until it reached the trestle, even if he impliedly commanded him to get onto it. We do not say

he was guilty of contributory negligence in deciding not to jump, for, in view of the constantly slackening speed of the train, it may be that he believed he was justified in taking his chances by remaining upon the hand-car; but we are to remember that the intestate was engaged in the service of the company, and hence had taken upon himself the usual and necessary risks of the service. *Strahlendorf v. Rosenthal*, 30 Wis., 674; *Schultz v. Railway Co.*, 44 Wis., 638. In deliberately choosing as he did, he took the risk implied in the choice. If contributory negligence is not to be imputed to the intestate for the decision which he thus finally made while passing over nearly 300 feet of track, then, for a much stronger reason, it would seem to follow that no negligence can be imputed to the section foreman for giving the command, under the circumstances in which he was placed.

The court is asked, as a matter of law, to determine whether the jury were authorized to infer negligence from the command given; and in doing so it must necessarily determine whether any other line of action could have been chosen by the section foreman which would have been less hazardous. If there was not, then it would be unjust to hold him negligent for choosing the one instead of the other. In view of the weight of the hand-car (over 1,000 pounds), the nearness of the train, the rapidity of its speed, and the intervening obstructions to the vision of the engineer, it would seem that the course taken was much less hazardous than an attempt would have been to put the hand-car off the track, the failure to do which is one of the grounds of the complaint. It may be that the section foreman had the option of a safer course than the one he adopted; but, even then, we should not impute negligence to such mere error of judgment. Such mere error of judgment does not have within it the elements of negligence. We conclude, therefore, that where there are two or more different lines of action, any one of which may be taken, and a person with ordinary skill, in the presence of imminent danger,

is compelled immediately to choose one of them, and does so in good faith, the mere fact that it is afterwards ascertained by the result that his choice was not the best means of escape, cannot be imputed to him as negligence.    See *Schultz v. Railway Co.*, 44 Wis., 638.

*By the Court.*— The judgment of the circuit court is affirmed.