MARY F. HAINLIN, *Plaintiff in Error* v. FRANK T. BUDGE, *Defendant in Error.*

1. The office of a bill of exceptions is to give the facts on which the trial court decided, and it should give all the facts bearing upon the decision, so that the appellate court may know fully and clearly everything which influenced the decision of the trial court.

2. As a general rule, exceptions can bring in question only the proceedings had in a cause at the term at which the exceptions are presented, and cannot reach proceedings had at a previous or subsequent term. Where the proceedings in the cause occur at two different terms, the proceedings of each term should be embodied in a separate bill of exceptions, which should be made up, presented, settled and filed within the time prescribed by statute and rule of court.

3. A bill of exceptions should be made up and signed during the term of the court at which the trial is had, unless by special order of the court further time is allowed. The requirements of Rule 97 of the Rules of Circuit Court in Common Law Actions relating thereto should be complied with in all respects.

4. Upon the entry of an order granting a new trial at law, the party aggrieved by such order may, under the provisions of Section 1695 of the General Statutes of 1906, without waiting for a final judgment in the cause, prosecute a writ of error to the proper appellate court, or, under the provisions of Section 1693 of such statutes, may wait until final judgment is rendered therein and then sue out a writ of error and assign as error the granting of the motion for a new trial. Such party, however, cannot in a bill of exceptions made up of proceedings which took place at the second trial incorporate therein matters which occurred at the first trial, upon which error is assigned, and have the same passed upon by an appellate court. The proceedings of each term should be embodied in a separate bill of exceptions.

5. Section 1696 of the General Statutes of 1906, relating to the

procurement of bills of exceptions, being in derogation of the common law, must be strictly construed.

6. Every presumption is in favor of the correctness of rulings made by the trial court, and this presumption of correctness and regularity attaches and applies with peculiar force to orders granting new trials.

7. The following requested instruction by the plaintiff in an action seeking to recover damages for personal injuries, alleged to have been caused by the negligence of the defendant, is properly refused:

"If you believe from the evidence herein that the plaintiff in this action through the negligence of the defendant was placed in a situation where she must adopt a perilous alternative or where in the terror of an emergency for which she was not responsible and for which the defendant was responsible, she acted wildly or negligently and suffered in consequence, such negligent conduct, under these circumstances, is not contributory negligence, for the reason that persons in great peril are not to be required to exercise all the presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances. In such a case the negligent act of the defendant is the proximate cause of the injury and the plaintiff may have her action."

It is error, however, to add to such proffered and refused instruction the following paragraph and then give it: "On the other hand, if the plaintiff's act resulted from a rash apprehension of danger which did not exist, and the injury which plaintiff sustained is to be attributed to rashness and imprudence, then the plaintiff is not entitled to recover."

8. In an action seeking to recover damages for personal injuries, alleged to have been caused by the negligence of the defendant, it is error to give an instruction to the jury in substance to the effect that the danger must actually exist, and not simply be apparent imminent danger to one placed in a perilous situation, where very quick decision and action were required.

9. The following instruction is erroneous, confusing and well cal-

culated to mislead the jury: "There is no presumption of law that the defendant has been negligent, arising from the mere fact of the happening of the accident. The burden is upon the plaintiff to prove that the defendant was to blame for the accident, and the evidence in the case must also convince you that the plaintiff did not by her carelessness contribute to the accident."

10. In an action seeking to recover damages for personal injuries, alleged to have been caused by the negligence of the defendant, all that may properly be required of the plaintiff is to establish by competent evidence the negligence of the defendant in causing the injury, as laid in the declaration. She cannot be required to show that she was not guilty of contributory negligence, such burden being cast upon the defendant. Not only is it not essential that the whole evidence convince the jury that the plaintiff was not guilty of contributory negligence, the burden is the other way, and if the evidence is evenly balanced the fact of contributory negligence is not established, and upon this issue the verdict should be for the plaintiff.

This case was decided by Division A.

Writ of Error to the Circuit Court for Dade County.

*Statement.*

On the 26th day of October, 1905, the plaintiff in error brought an action against the defendant in error in the Circuit Court for Dade County, seeking to recover damages for personal injuries received by the plaintiff by reason of the alleged negligence of the defendant.

The declaration is as follows: "Mary F. Hainlin by F. M. Hudson, her attorney, sues Frank T. Budge in an action of trespass, and for cause of action says:

On the 6th day of June, A. D. 1905, in the city of Miami, Dade County, and State of Florida, the defend-

ant, Frank T. Budge, was the owner of a certain motor vehicle known as an automobile, the same being a vehicle propelled by power other than muscular power and not running upon rails or tracks, and on said day the said defendant was then and there using and operating said automobile as a means of transportation on the streets of said city of Miami, the same being then and there a densely populated city, and the said streets being habitually used for great and continued traffic. And said defendant then and there drove, ran, operated and conducted his said automobile upon and along a certain public highway in said city known and designated as Avenue C, to and upon the intersection of said Avenue C with 6th street and into the said 6th street, the same being a public street of said city, and the said defendant then and there negligently operated the said automobile at a rate of speed greater than is proper and reasonable and negligently failed and refused to give any warning or signal of the approach of his said automobile and negligently failed and refused to use reasonable precaution to insure the safety of the plaintiff; and by reason of such failure and refusal and because of such default and as a result of the negligence of defendant as above specified the said defendant then and there negligently and wrongfully operated, drove and guided his said. automobile against, upon and over the plaintiff, Mary F. Hainlin, and. with said automobile struck the plaintiff with great force and violence and knocked her down, and with the wheels of said automobile ran over the plaintiff, while the plaintiff was then and there with all due care and diligence rightfully and lawfully using and occupying the public highway above mentioned, namely: Avenue C at its. intersection with 6th street; and thereby the said plaintiff was greatly bruised, hurt, wounded and injured, to-wit: by wounds in the plaintiff's

head, by wounds upon each of the arms of the plaintiff, by a wound to the plaintiff's spine, and grievous internal wounds, and by reason of the aforsesaid injuries, the plaintiff then and there became lame, sick and disordered and afflicted with nervous prostration and has so continued for a long time, to-wit: from thence hitherto, and was during all that time thereby rendered incapable of following and transacting her affairs and business by her during that time to be done, and plaintiff has suffered great pain and mental anguish; and also plaintiff was thereby obliged to, and necessarily did incur great expense in obtaining medical aid and other assistance. And the plaintiff further alleges that the said injuries and disorders are permanent and incurable.

For her damages the plaintiff claims the sum of ten thousand ($10,000.00) dollars."

The defendant filed the following pleas:

"The defendant, Frank T. Budge, by Patterson & Erwin, his attorneys, complained of in the declaration herein, says that he is not guilty of the said supposed grievances in said declaration laid to his charge, or any, or either of them, in manner and form as the plaintiff has thereof complained in said declaration against him.

2. And for a second plea the defendant says that he did not at the time and place alleged in the declaration negligently operate his automobile at a rate of speed greater than is proper and reasonable, and that he, said defendant, did not fail or refuse to give any warning or signal of the approach of his said automobile, and did not negligently fail and refuse to use reasonable precaution to insure the safety of the plaintiff, and defendant denies that because of defendant's default and as the result of the negligence of defendant as alleged in the declaration, he, the said defendant, than and there negligently and wrongfully operated, drove and guided his

said automobile against, upon and over plaintiff, Mary F. Hainlin, and denies that the plaintiff was then and there with all due care and diligence rightfully and lawfully using the public highway mentioned in the declaration, to-wit: Avenue 'C' at its intersection with Sixth Street; and defendant says that before and at the time when he, the defendant, is charged with the trespasses and negligence in the declaration herein, he, the defendant, was using his automobile to transport himself and children along Avenue 'C' in said city of Miami, and approaching Sixth Street where it intersects and crosses said Avenue 'C' and that at said time he, the defendant. seeing three persons, among whom was the plaintiff, standing on the opposite side of Sixth Street in the center of Avenue 'C,' and the defendant also perceiving that the passenger train of the Florida East Coast Railway was about to pull out from the depot and about to cross said Avenue 'C' north of where said three persons were standing, brought his automobile to a full stop on the south side of Sixth Street where said Sixth Street crosses said Avenue 'C,' and that shortly thereafter the said railway train started from the station but again stopped, at which time the defendant attempted to go from the center of Avenue 'C' with his said automobile in a careful and prudent manner west on Sixth Street, at which time a man approaching upon a bicycle caused the defendant to blow the horn of his automobile two or three times, whereupon the man upon the bicycle turned to defendant's right between said automobile and the three persons in the street, the automobile at that time being turned to the left in order to go west on Sixth Street, and defendant says that just as the automobile turned into Sixth street he noticed the plaintiff running diagonally from the center of Avenue 'C' southwest across the western portion of Avenue 'C' and across

said Sixth street toward the sidewalk on the south side of said Sixth street at a point about twenty-five feet west of the intersection with Sixth Street of Avenue 'C,' and defendant says that he reversed the engine of his automobile and applied the brakes and shouted to the plaintiff not to run in front of the automobile, and that said defendant kept turning the automobile to the left to the best of his ability in order to prevent a collision between the plaintiff and the automobile, and defendant says that during all this time the automobile was lighted with three lanterns, nevertheless the plaintiff ran in front of said automobile carelessly, negligently and with the greatest possible carelessness for her own safety and was in the act of falling when said plaintiff was struck about the shoulder or breast by the search light in front of said automobile, and that the said automobile with its front wheels passed, one upon each side of said plaintiff, and came to a stop by the exertions of the defendant, and that the right hand rear wheel rested upon the clothes of the plaintiff, and defendant says by reason of the carelessness and negligence of the said plaintiff, and without any default on the part of the defendant, but by and through the want of due care on the part of said plaintiff, the plaintiff sustained the injury in the said declaration mentioned; and so the defendant in fact says that whatever hurt or damage happened to the plaintiff, it was caused by such accident and not by the default of the defendant; which are the same supposed trespasses in said declaration mentioned, and this the defendant is ready to verify.

And for a third plea herein, the defendant says that the injuries and disorders alleged in said declaration are not permanent and incurable."

Issue was joined upon these pleas and a trial was had before a jury, in September, 1906, which resulted in a

verdict for the sum of $3,000 in favor of the plaintiff. The defendant filed a motion for a new trial, which was granted, and the case came on again for trial before a jury in March, 1907, upon the same issues, which resulted in a verdict and judgment in favor of the defendant. This judgment the plaintiff seeks to have reviewed here by writ of error.

*Hudson & Boggs,* for plaintiff in error.

*Geo. M. Robbins,* for defendant in error.

SHACKLEFORD, C. J., *(after stating the facts.)*—The first two assignments are as follows:

"1. The court erred in permitting defendant's motion for a new trial, filed on the 15th day of September, 1906, to be amended by the defendant on the 5th day of October, 1906, so as to set up newly discovered evidence, such amendment not having been filed within four days after the rendition of the verdict nor during the same term of the court at which the verdict was rendered.

2. The court erred in entering and granting an order on the 19th day of October, 1906, whereby defendant was granted a new trial, and the verdict on the 15th day of September, 1906, set aside."

The defendant objects to the consideration of these assignments and has moved to strike from the bill of exceptions that portion thereof relating to proceedings had on the first trial of the cause, contending that such proceedings as took place at the first trial are not properly included in the bill of exceptions relating to matters that occurred at the second trial. This motion was argued before us at the final submission of the cause. We take it up for consideration first because, if the contention of the defendant is well founded, these two assign-

ments are not properly before us, and, therefore, their merits cannot be enquired into or entertained.

Under the provisions of Section 1695 of the General Statutes of 1906, the plaintiff could have prosecuted a writ of error to the order granting a new trial, without waiting for a final judgment in the cause. Having seen fit not to avail herself of this statutory right or privilege but to go into a second trial of the cause and take her chances therein, having lost out, can she in a bill of exceptions made up of proceedings which took place at such second trial incorporate therein matters which ocurred at the first trial, upon which she assigns error, and have the same passed upon by this court? That is the question we are called upon to answer. The general rule seems to be that where the proceedings in the case occur at two different terms, the proceedings of each term should be embodied in a separate bill of exceptions and filed at the term to which it properly belongs. 3 Ency. of Pl. & Pr. 386, and authorities cited in note 2. According to the statement in 3 Cyc. 39, "Exceptions can bring in question only the proceedings had in a cause at the term at which the exceptions are presented, and cannot reach proceedings had at a previous or subsequent term." Also see authorities cited in note 81.

We have repeatedly held that the office of a bill of exceptions is to give the facts on which the court decided, and that it should give all the facts bearing upon the decision, so that the appellate court may know fully and clearly everything which influenced the decision of the court below. See Hoodless v. Jernigan, 46 Fla. 213, text 224, 35 South. Rep. 656, text 660, and authorities there cited; Lovett v. State, 29 Fla. 356, 11 South. Rep. 172; Brown v. State, 29 Fla. 543, 10 South. Rep. 736; Tunno v. International Ry. & Steamship Co., 34 Fla. 300, 16 South. Rep. 180. In Brown v. State, *supra*; Glasser

v. Hackett, 38 Fla. 84, 20 South. Rep. 820; Allen v.
Lewis, 38 Fla. 115, 20 South. Rep. 821, will be found a
full and instructive account of the origin and office of
a bill of exceptions. We find that "at common law a writ
of error did not lie to correct an error which was not
apparent on the record, and, therefore, where a party
to a cause objected to the decision of the court on matters
*in pais*, he was without any legal remedy whereby such
a decision could be certified to the appellate court for re-
view." To remedy this defect, it was enacted by statute
13 Ed. 1, "if one impleaded before any of the justices
allege an exception, praying that the justices will allow
it, that, if they will not, and if he write the exceptions,
and require the justices to put their seals to it, the jus-
tices shall do so, and if one will not, another shall." As
was further said in Brown v. State, *supra,* "this statute
of 13 Ed. 1, is old enough to be in force here, and is un-
doubtedly a part of our law applicable to civil causes."
Also see Proctor v. Hart, 5 Fla. 465. Our statute in re-
gard to the procurement of bills of exceptions was orig-
inally enacted in 1828, re-enacted with amendments
in 1848, and now forms Section 1696 of the General
Statutes of 1906. We deem it unnecessary to copy it
here. Rule 97 of the Rules of Circuit Court in Common
Law Actions, found on page 32 of such Rules prefixed
to 14 Fla., is as follows: "The bill of exceptions shall
be made up and signed during the term of the court at
which the verdict is rendered or trial had, unless by
special order further time is allowed. In case such spe-
cial order is made, it shall be entered in the minutes,
and in making up the bill of exceptions the fact that such
an order was made shall be mentioned therein, or shall
otherwise appear in the record." This rule was adopted
in 1873 and is still in force. It has been construed a
number of times by this court and it has been uniformly

held that "a bill of exceptions should be made up and signed during the term of the court at which the trial is had, unless by special order further time is allowed." See Bardin v. L'Engle, 13 Fla. 571; Robinson v. Hartridge, 13 Fla. 501; Webster v. Barnett, 17 Fla. 272; Pottsdamer v. State, 17 Fla. 895; Smith v. State, 20 Fla. 839; Bowden v. Wilson, 21 Fla. 165; Greely v. Percival, 21 Fla. 428; Bush v. State, 21 Fla. 569; Willingham v. State, 21 Fla. 761, text 784; Myrick v. Merritt, 21 Fla. 799; Temple v. Fla. Land & Immigration Co., 23 Fla. 59, 1 South. Rep. 333; Lewis v. Meginiss, 25 Fla. 589, 6 South. Rep. 169; McGee v. Ancrum, 33 Fla. 499, text 506, 15 South. Rep. 231, text 233; Stephens v. Hale, 33 Fla. 618, 15 South. Rep. 251; Pickett v. Bryan, 34 Fla. 38, text 42, 15 South. Rep. 681, text 682; Jacksonville St. Railroad Co. v. Walton, 42 Fla. 54, text 79, 28 South. Rep. 59, text 66; Walker v. Parry, 51 Fla. 344, 40 South. Rep. 69; Montgomery v. State, 54 Fla. 73, 45 South. Rep. 813. Also see the discussion in the several opinions in Atlantic Coast Line R. R. Co. v. Mallard, 53 Fla. 515, 43 South. Rep. 755. An examination of these authorities discloses that, as was said in Pickett v. Bryan, *supra,* "this court has never shown any disposition to relax the rule above stated and we think the only safe course is to adhere to it." To the same effect is Montgomery v. State, *supra.* Where a motion for a new trial is continued by a special order of the court entered upon the minutes to a day beyond the term it can be heard and disposed of by the judge in vacation, and upon such disposition a final judgment can be entered by the clerk under the order of the judge, though not on a rule day. On the hearing of such a motion the judge is holding a term of court as to that case, and the entries of the clerk made in obedience to the orders of the court are the entries of the judge him-

self.   McGee v. Ancrum, *supra.*   Also see Atlantic Coast
Line R. Co. v. Mallard, *supra.*   Chapter 5403 of the
Laws of Florida of 1905 expressly empowers and author-
izes the judge to hear and determine in vacation any mo-
tion for a new trial.   Section 1608 of the General Stat-
utes of Florida of 1906, which was in force at the time
of the first trial, provides that motions for new trials
standing over from one term to another shall operate
as a supersedeas when so ordered by the court, and the
entry of such motion shall not prevent the entry of judg-
ment on the verdict.

In the instant case there is only one bill of exceptions.
From it we learn that at the first trial of the cause a
verdict was rendered in favor of the plaintiff on the
15th day of September, 1906, and on the same day the
defendant filed his motion for a new trial, which was
amended on the 19th day of September by adding another
ground, and further amended on the 5th day of October,
1906, by adding still another ground, which last amend-
ment was objected to by the plaintiff, the objection over-
ruled and an exception noted to the ruling.   We further
learn from the bill of exceptions that on the 5th day of
October, 1906, "at a subsequent term of the said court,
the said motion coming on to be heard," certain affidavits
were introduced by the defendant, and that on the 19th
day of October, at such subsequent term, the court made
the following order:

"Upon consideration of said motion, the court, on
the 19th day of October, 1906, at such subsequent term
of the said court, granted the said motion upon the fol-
lowing grounds:

1. Because of the newly discovered evidence set up
in defendant's motion for a new trial;

2. Because after the trial, one of the jurors had stated
to the judge of said court that he, the said juror, while

57 Fla.—23.

on the jury, had been told the circumstances of the collision by an alleged eye witness whose account was quite different from the account given by the witnesses and that the juror's statement had left the impression upon the said judge that this outside information had influenced the verdict."

What order, if any, was made by the court as to continuing this motion we are nowhere advised.

As we have already seen, under the provisions of Section 1695 of the General Statutes of Florida of 1906, which formed Section 1267 of the Revised Statutes of 1892, the plaintiff could have prosecuted a writ of error to the order granting a new trial, without waiting for a final judgment in the cause. We further find that, under Section 1693 of such General Statutes, which was originally enacted in 1853, the plaintiff also had the option of waiting until final judgment was rendered and then suing out a writ of error, assigning as error the granting of a motion for a new trial. Indeed, until the adoption of the Revised Statutes of 1892, this was the only course a party could pursue who felt aggrieved by the granting of such motion. It by no means follows, however, that the proceedings had at both first and second trials could be embraced in one and the same bill of exceptions. We have found that the general rule was otherwise. Also see to the like effect People's Savings Bank & Trust Co. v. Keith, 136 Ala. 469, 34 South. Rep. 925. Section 1696 of the General Statutes of Florida of 1906, relating to the procurement of bills of exceptions, being in derogation of the common law, must be strictly construed. See Manley v. Union Bank, 1 Fla. 160; Shepard v. Kelly, 2 Fla. 634, text 655; Sealey v. Thomas, 6 Fla. 25, text 33; Kimball v. Jenkins, 11 Fla. 111, S. C. 89 Amer. Dec. 237; Putnam Lumber Co.

v. Ellis-Young Co., 50 Fla. 251, text 262, 39 South. Rep. 193, text 196.

We have fully in mind what was said by this court in Greeley v. Percival, *supra,* but, as we understand it, nothing said therein is at variance with the conclusion we have reached in the instant case.   In the cited case there was a denial of the motion for a new trial at the same term at which the verdict was rendered, and subsequently at the same term a vacation of the order refusing a new trial, and a continuance of the same and a supersedeas granted.   At the succeeding term an order was made denying such motion, and this court held that the latter term is "the term of the court at which the verdict is rendered or trial had," within the meaning of Rule 97 of Circuit Court Rules, which we have copied above.   We fully approve of this holding.   The facts and circumstances, and proceedings generally, in *that* case and those in the *instant* case are so different that comment thereon is rendered practically superfluous. Suffice it, then, to say that not only did the plaintiff decline to avail herself of the privilege afforded her of taking writ of error to the order granting the new trial, but elected to take her chances of recovery at a second trial, without taking the precaution to have a bill of exceptions made up incorporating the proceedings therein so as to present for review here the order granting a new trial and having this court pass on its correctness. Having lost at the second trial, she now seeks to have us determine such question by injecting it into the bill of exceptions made up at the second trial.   We are of the opinion that this cannot be done.   We find that such motion for a new trial contained a number of grounds, one of which was to the effect that the verdict was contrary to the evidence.   It is settled law here that every presumption is in favor of the correctness of rulings

made by the trial court, and it is incumbent upon a party who predicates errors upon such rulings to make such errors clearly appear to an appellate court. Lewis v. State, 55 Fla. 54, 45 South. Rep. 988, and authorities there cited. It has also been repeatedly held by this court that this presumption of correctness and regularity attaches with peculiar force to orders granting new trials. Jones v. Jacksonville Electric Co., 56 Fla. 452, 47 South. Rep. 1, and authorities there cited, especially Reddick v. Joseph, 35 Fla. 65, 16 South. Rep. 781. Without further discussion, which seems unnecessary, we are of the opinion that the first two assignments are not properly before us for consideration, and that the motion of the defendant must be granted.

We now pass to a consideration of the other assignments.

Twenty-four errors are assigned, but of these a number are not argued and hence will be treated as abandoned. Of those argued several are based upon rulings of the court as to the admission or exclusion of testimony relating to the plaintiff's condition, therefore are of moment only as to the amount of damages, but the jury having returned a verdict in favor of the defendant, thereby finding the defendant non-liable for any damages, it becomes unnecesary to consider them. We might further add that such assignments are based upon hypothetical questions propounded to a physician or the answers thereto. The remaining assignments are based upon the giving or refusal of instructions, with the exception of the last, which is predicated upon the denial of the motion for a new trial. We shall discuss such of these as we deem advisable for a proper disposition of the case.

The eleventh assignment is based upon the refusal of the following instruction requested by the plaintiff: "If you believe from the evidence herein that the plaintiff in

this action through the negligence of the defendant was placed in a situation where she must adopt a perilous alternative, or where in the terror of an emergency for which she was not responsible and for which the defendant was responsible, she acted wildly or negligently and suffered in consequence, such negligent conduct under these circumstances, is not contributory negligence, for the reason that persons in great peril are not to be required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances. In such a case the negligent act of the defendant is the proximate cause of the injury and the plaintiff may have her action."

After refusing the proffered instruction, the court added a paragraph thereto and gave it as thus modified, to which the plaintiff also excepted. The added paragraph is as follows: "On the other hand, if the plaintiff's act resulted from a rash apprehension of danger which did not exist, and the injury which plaintiff sustained is to be attributed to rashness and imprudence, then the plaintiff is not entitled to recover."

We find the requested instruction, which was refused, was taken verbatim from the case of Lincoln Rapid Transit Company v. Nichols, 37 Neb. 332, text 336, 55 N. W. Rep. 872, text 873, S. C. 20 L. R. A. 853, text 855. The instruction in the cited case was given by the trial judge, and the Supreme Court of Nebraska in a well reasoned opinion held that no error was committed in giving the same, saying that: "This instruction told the jury, in effect, that if they found that Mrs. Nichols, while placed in a dangerous situation through the transit company's negligence, was frightened and in terror, and acted carelessly and was injured, her conduct under such circumstances was not contributory negligence; as a person in great peril is not required to exercise the care

demanded of a careful person under ordinary circumstances." It is further said in the opinion: "A choice of evils may often be all that is left to a man and he is not to blame if he chooses one, nor if he chooses the greater, if he is in circumstances of difficulty and danger at the time and compelled to decide hurriedly." "When one is placed by the negligence of another in a situation of peril, his attempt to escape danger, even by doing an act which is also dangerous, and from which injury results, is not contributory negligence such as will prevent him from recovering for an injury, if the attempt was one such as a person acting with ordinary prudence might, under the circumstances, make. And this is the rule, though a person would not have been injured had he not made an attempt to escape the threatened danger."

After citing a number of authorities, the court proceeds to say: "When the accident occurred Mrs. Nichols and the transit company's engine were approaching one another, and the contention of the transit company is that Mrs. Nichols should have turned about and made an effort to escape, and in not doing so she was guilty of contributory negligence. The evidence is that on one side of the street stones were piled up for curbing purposes, and she could not turn on that side. To turn the other way she would have to cross the street railway track in front of the coming locomotive; that she was frightened; her horse terrified and practically unmanageable; had she attempted to cross the track and been struck while crossing, that would have been alleged here as contributory negligence. She may not have chosen the wiser or safer course. The trial judge told the jury, "if you should find that the plaintiff's horse, while yet a considerable distance from the motor, evinced alarm and a tendency to be frightened and threatened accident, then it was the duty of the plaintiff to turn about, if she

could have done so, and to have done all she could to avoid accident, or all that a reasonably prudent person would have done under the circumstances; and if you should find from the evidence that the plaintiff did not do so, then she would be guilty of such contributory negligence as would prevent her recovery.' The instruction complained of then, while not very happily expressed, stated the law correctly, and was properly given, in view of paragraph No. 10 of the charge of the trial judge."

We find that the later case of St. Joseph & G. I. R. Co. v. Hedge, 44 Neb. 448, text 460, 62 N. W. Rep. 887, refers to and approves of the principle enunciated in Lincoln Rapid Transit Co. v. Nichols, *supra*, and the following language is used in the opinion: "But independent of the statutory rule, a passenger placed in a position of apparent imminent peril through the negligence of the carrier may recover for injuries received while endeavoring to escape in obedience to the natural instinct of self-preservation, provided he exercises ordinary prudence in view of all the circumstances of the case; and such is the rule, although it subsequently appears that no actual danger existed." The Supreme Court of North Carolina in the case of Crampton v. Ivie Bros. 124 N. C. 591, text 597, 32 S. E. Rep. 968, also approves and follows the rule laid down in Lincoln Rapid Transit Co. v. Nichols, *supra*. The following authorities will also be found to bear upon the point: Mitchell v. Charleston Light & Power Co., 45 S. C. 146, 22 S. E. Rep. 767; Gumz v. Chicago, St. P. & M. Ry Co., 52 Wis. 672, 10 N. W. Rep. 11; Wilson v. Northern Pacific R. Co., 26 Minn. 278, 3 N. W. Rep. 333; Seigrist v. Arnot, 10 Mo. App. 197; Cook v. Parham, 24 Ala. 21, text 34; Karr v. Parks, 40 Cal. 188; Wesley City Coal Co. v. Healer, 84 Ill. 126; Chicago & A. R.

R. Co. v. Becker, 76 Ill. 25; Linnehan v. Sampson, 126 Mass. 506; Pennsylvania R. R. Co. v. Werner, 89 Pa. St. 59; Stokes v. Saltonstall, 13 Pet. (U. S.) 181; Iron R. R. Co. v. Mowery, 36 Ohio St. 418; Schultz v. Chicago & N. W. Ry. Co., 44 Wis. 638; Cuyler v. Decker, 20 Hun. (N. Y.) 173; Doak v. Northern Central Ry Co., 75 N. Y. 320; Crowley v. Strouse, Cal. , 33 Pac. Rep. 456; Gibbons v. Wilkesbarre & S. St. Ry. Co., 155 Pa. St. 279, 26 Atl. 417; Silver Cord Combination Mining Co. v. McDonald, 14 Colo. 191, 23 Pac. Rep. 346; Haney v. Pittsburgh C. C. & St. L. Ry. Co., 38 W. Va. 570, 18 S. E. Rep. 748.

We are of the opinion that the requested and refused instruction, even though it may not have been very happily worded might well have been given. Under the reasoning in the opinion in the Nebraska case, from which we have quoted extracts, no error would have been committed had it been given, especially when construed with all the other instructions given relating to the same point. The concluding paragraph added by the court neutralized the preceding portions of the instruction and in substance told the jury that the danger must actually exist, and not simply be apparent imminent danger to one placed in a perilous situation, where very quick decision and action were required. The added paragraph made the instruction clearly erroneous. As modified and given by the court it was at variance with the principle enunciated in the two cited Nebraska cases, as well as in the other cited authorities. ·

We are strengthened in this conclusion when we find that, at the request of the plaintiff, the following instructions were given to the jury:

"2. The court instructs the jury that negligence consists in a want of the reasonable care which would be exercised by a person of ordinary prudence under all

existing circumstances in view of the probable danger of injury.

6. The court instructs you that the driver or operator of an automobile upon a public highway, must use ordinary care in its management, and is liable for all damages occasioned by his careless driving or running of said machine. Greater care is required of one driving along a crowded street or thoroughfare within a town or city than upon an ordinary public road, where there is no such crowded conditions. Therefore, if the jury believe from the evidence in the case, that the defendant was driving or operating his automobile at the time of the accident, negligently and recklessly, and without ordinary care, taking into consideration all the facts and circumstances surrounding the accident, and as the result of such want of ordinary care, inflicted upon the plaintiff the injuries complained of, the verdict should be for the plaintiff. Ordinary care in driving or operating an automobile means such care as prudent men ordinarily use in like circumstances taking into consideration the time, the place, the conditions of the highway, the possible dangers, the known obstructions, and the damage likely to result from driving carelessly or operating an automobile carelessly at that particular time and place.

7. The court further instructs the jury that even if they should believe from the evidence that the defendant was not at the time of the injury complained of, driving or operating his automobile at an unusual rate of speed, still if they further believe from the evidence, that the defendant did commit the injury upon the plaintiff, as charged in the declaration, while she was using due and proper care, and the defendant might by using ordinary care at the time have avoided committing such injury, and that in consequence of a want of such reasonable

and ordinary care on the part of the defendant, the plaintiff received the injuries complained of, then the jury should find for the plaintiff, and assess the plaintiff's damages at such sum as they may think from the testimony will compensate her for the injuries so sustained by her, not to exceed the amount claimed in the declaration."

We further find that, at the request of the defendant, the following istructions, each of which was duly excepted to, was given to the jury:

"2. Ordinary care depends upon the circumstances of each particular case, and is such care as a person of ordinary prudence and skill would usually exercise under the same or similar circumstances.

"5. If you believe from the evidence that the plaintiff could have by exercising ordinary prudence prevented the injury, or that by her own act she contributed to the injury, she cannot recover damages resulting therefrom, and you should find for the defendant.

"6. It is your duty to inquire if, at the time of the accident, the defendant was operating his automobile at a greater rate of speed than was proper and reasonable; also whether or not he failed to give warning or signal of his approach, and also whether or not he used reasonable precaution to prevent the accident. You should also inquire whether the plaintiff could, by exercising ordinary prudence, have prevented the injury, and whether or not by her own acts she contributed to the injury; and if you find that both parties were to blame, or if you find that the accident happened without blame to either, it is your duty to find for the defendant.

a. A traveler has an equal right to employ an automobile as a means of transportation, and to occupy the public streets, with other vehicles in common use, and the operator of such automobile has the right to assume,

and to act upon the assumption, that every person whom he meets will exercise the ordinary care and caution according to the circumstances, and will not negligently or recklessly expose himself to danger, and will make an attempt to avoid it.

b. A person standing in a public street, or in the intersection of two public streets, is required to make a reasonable use of all his or her senses, in order to observe an impending danger, and if she fail to do so, and through such negligence, becomes frightened and runs into danger, then such person is guilty of such negligence as will prevent recovery for injuries sustained."

We shall not undertake any extended or detailed discussion of these assignments. Upon some of the points and in some respects the authorities are in a state of hopeless confusion. A reconciliation of them is an impossibility. It seems to the writer of this opinion that this confusion has largely resulted from the use of such terms as "ordinary care," "a person of ordinary prudence and skill," "a reasonable use of all the senses," &c., and the attempt to define them. As is said in 7 Words & Phrases Judicially Defined, 5976: "The terms 'reasonable prudence,' 'ordinary care,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be ordinary care in one case may under different surroundings and circumstances be gross negligence." See authorities there cited. It is further there said: "The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to know the special circumstances of each particular case, and then say whether the conduct of the parties in that case was such a would be expected of reasonably prudent men under a similar state of affairs."

Just here we encounter the very crux of the difficulty. By what standard are jurors to go to determine what is "a reasonably prudent man" and how he would or should act under any given state of circumstances? As a matter of fact, we have learned from the teaching of common sense and every-day observation and experience that the "reasonably prudent man," "the man of ordinary prudence," or under whichever one of the various kindred aliases he may be designated, has no actual existence and "does not correspond to anybody in particular in everyday life, but is rather a type with whom everybody may be compared." In other words such a man is a pure abstraction, a legal fiction, as much so as the "economic man" in political economy is purely a methodological assumption, and both must be regarded as "travesties of the truth, if taken as full and complete accounts of the actual facts." At best, such terms should be regarded as only a kind of "conceptual shorthand," used as a matter of convenience. Unless so understood and used, as has been well put by Mr. G. F. Arnold, in his Psychology Applied to Legal Evidence, 168: "Our own belief is that consciously, subconsciously or unconsciously, the judge or the juryman does in each case when he attempts to apply his test have in mind a concrete individual who is no less a person than himself; this is his mental image, and the question which he really asks himself is, does the defendant appear to *me* to have exercised prudence or not? Should I have done the same, if I had been in his place? And he answers this to himself, without any reference to any general standard or general rule at all, but merely according to his own individual experience and the idiosyncracies of his own particular disposition. Hence it results that so far from the test of 'the man of average prudence' being a general and universal one it varies with each individual

who applies it, and the learned Chief Justice in the case of *Vaughn v. Menlove,* quoted above accurately described his own test when using the phrase 'as variable as the foot of each individual.' "

The entire chapter, entitled "The Normal Man" and being Chapter VI, from which the foregoing excerpt is taken, will be found to be both interesting and instructive. The case of Vaughn v. Menlove referred to therein, will be found in 3 Bing. N. C. 468; 43 R. R. 711. As throwing further light upon the uncertainty which prevails upon this point and as showing the extent to which some of the courts have gone, we would refer to the case of Drown v. New England Telephone & Telegraph Co., 70 Atlantic Rep. 599, decided by the Supreme Court of Vermont on the 12th of August, 1908, the opinion being delivered by Mr. Chief Justice ROWELL. We copy the 21st headnote, which is as follows:

"In a personal injury action by a servant, the court told the jury that it would refer during the charge to 'the prudent man, and reasonable care' and they would understand thereby 'the care and prudence of an ordinarily careful and prudent man in like circumstances,' and would measure plaintiff's conduct by that standard, that care of a prudent man under some circumstances might be negligence under others, and they should apply the test with their general knowledge of the degree of care that a man of ordinary prudence would exercise and, in directing attention to the question of plaintiff's care, told them to consider whether he exercised the care and prudence 'of an ordinary prudent man and was without fault on his part.' *Held,* that the standard of care stated as the measure of plaintiff's conduct was too low; the words 'ordinarily prudent man' suggesting mediocrity of care, if not carelessness."

It will be seen from this headnote, and it is even more

apparent in the opinion, that the court in effect holds that the amount of care exercised by the "ordinarily prudent man" is but little, if any, better than mere carelessness, which standard is held to be too low to meet the requirements of the law. By reason of such conflicting decisions upon the point in question and the uncertainty and confusion which have been engendered thereby, Mr. Arnold further says on page 15 of the work cited:

"The revolt against the unrealities of the law is similar to the re-action in the philosophical world of the Pragmatists or Humanists against the older Intellectualism. It is due in both cases to a demand that man shall be taken as he is and shall not, by a species of abstraction, be deprived of the qualities which entitle him to the name of man and left a mere abstraction which may be easier to handle but which does not represent any reality which has ever had any actual existence."

In other words, it is demanded that courts of justice should deal with realities and actualities instead of abstractions and legal fictions. This is said to be an age of common-sense, and it is regarded as an anomaly for judges to instruct juries that they must measure the actual conduct of a real person by that of an artificial or mythical "reasonably prudent man" in order to determine whether or not such real person is entitled to a recovery of damages for personal injuries caused or inflicted by or through the negligence of the defendant. In so doing the judges refer juries, composed as they usually are of plain men, to a standard of measurement about which they judges themselves with their trained minds and all their experience would differ widely. However, it is not the purpose of the writer to write a treatise or dissertation concerning this confessedly difficult question. He has simply thought it well to throw out

these words of caution and admonition, and all this simply represents his individual views thereon.

One other question presents itself which seems to call for some consideration. The plaintiff in this case was a woman. Does the law make any difference as to the amount or degree of caution to be observed by or between a man or woman? Must the conduct of either sex be measured by the standard of the mythical "reasonably prudent person?" If so, the difficulties of the jury are increased. See the interesting discussion and authorities cited in 1 Thompson's Commentaries on Negligence, Section 339. We do not feel called upon in dealing with the assignments of error as presented to enter into any extended discussion along this line. Upon this point also there is a conflict of authorities. See Hassenyer v. Michigan Cent. R. Co., 48 Mich. 205, 12 N. W. Rep. 155, S. C. 42 Amer. Rep. 470, wherein the opinion was rendered by Mr. Justice Cooley; Snow v. Provincetown, 120 Mass. 580; City of Bloomington v. Perdue, 99 Ill. 329; Fox v. Town of Glastenbury, 29 Conn. 204. As is said by Judge Thompson in the section cited above from his Commentaries on Negligence, the better practice seems to be that "in a case where an action is brought for an injury to a woman, her age, knowledge, experience and capacity to take care of herself in the given situation ought to be given to the jury, and they ought to be told—as in the case of children—that the law requires of her no more care for her own safety than is commensurate with her years, knowledge, experience, sex and capacity. And this is consistent with the conclusion that the jury cannot be instructed that the law does not require the same degree of care and prudence in a woman as in a man; because, in some situations and under some conditions it does not, and,

generally speaking, the law has no rule on the subject, but it ought to be left with the jury."

The sixteenth assignment is based upon the giving of the following instruction, at the request of the defendant: "There is no presumption of law that the defendant has been negligent, arising from the mere fact of the happening of the accident. The burden is upon the plaintiff to prove that the defendant was to blame for the accident, and the evidence in the case must also convince you that the plaintiff did not by her carelessness contribute to the accident."

We are of the opinion that this instruction is confusing and well calculated to mislead the jury. All that is properly required of the plaintiff is to establish by competent evidence the negligence of the defendant in causing the injury, as laid in the declaration. She could not be required to show that she was not guilty of contributory negligence, such burden being cast upon the defendant. See Louisville & N. R. R. Co., v. Yniestra, 21 Fla. 700; City of Orlando v. Heard, 29 Fla. 581, 11 South. Rep. 182; Morris v. Florida Cent. & P. R. Co., 43 Fla. 10, 29 South. Rep. 541; Moore v. Lanier, 52 Fla., 353, 42 South. Rep. 462; Jacksonville Electric Co. v Sloan, 52 Fla. 257, 42 South. Rep. 516. In City of Orlando v. Heard, *supra,* it was held that the plaintiff was not required to negative the fact of contributory negligence on his part. While the declaration in the instant case does contain such an allegation, it is superfluous and may well be treated as surplusage. It could not be held to change in any way the burden of proof. The allegations of the declaration are complete without it. See 27 Amer. & Eng. Ency. of Law (2nd ed.) 547, and authorities cited in note 1; 21 Ency. of Pl. & Pr. 228, 229, 253. Not only is it not essential that the whole evidence convince the jury that the plaintiff was not guilty

of contributory negligence, the burden is the other way, and if the evidence is evenly balanced the fact of contributory negligence is not established and upon this issue the verdict should be for the plaintiff. We are of the opinion that this instruction constitutes reversible error.

We see no useful purpose to be accomplished by a discussion of such of the other assignments as are properly presented for our consideration. We have said sufficient for a proper disposition of the case. For the errors found the judgment must be reversed and a new trial awarded, and it is so ordered.

It may well be that as framed the issues are somewhat confused. The pleas may be open to attack by motion or demurrer, but no such attack was made on them, hence the point is not before us for consideration.

Judgment reversed.

COCKRELL and WHITFIELD, JJ., concur.

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.