WILLIAM LUNHAM, *Plaintiff in Error*, v. LOTTIE DeMERRITT, *Defendant in Error*.

Opinion Filed June 6, 1922.

In an action to recover damages for personal injuries, where liability appears, but the damages awarded in the judgment are manifestly excessive, a remittitur will be permitted to be entered, and in default thereof a new trial will be granted by the appellate court. And this may be done even though the trial court had permitted a remittitur of a part of the

amount found by the verdict, and had rendered judgment upon the remittitur for an amount less than that stated in the verdict.

A Writ of Error to the Circuit Court for Dade County; H. Pierre Branning, Judge.

Judgment Reversed if Remittitur is Entered.

*R. F. Burdine* and *W. J. Oven* for Plaintiff in Error;

*Bart A. Riley, R. B. Gauntier* and *Harry Hawkins,* for Defendant in Error.

PER CURIAM.—In an action for personal injuries caused by an automobile being operated in a city street, the plaintiff obtained a verdict for $12,000.00 At the suggestion of the trial court a remittitur of $4,500.00 was entered and judgment rendered for $7,500.00. The defendant on writ of error argues that liability as alleged is not proven, and that the damages adjudged are excessive. A ground of liability within the allegations appears from the evidence, but notwithstanding the remittitur entered, the judgment is excessive in view of the entire record. Tampa Electric Co. v. Gaffga, 81 Fla. 268, 87 South. Rep. 922, and authorities cited.

If a remittitur of $2,500.00 is entered within thirty days the judgment will stand affirmed for $5,000.00; otherwise a new trial is granted.

It is so ordered.

BROWNE, C. J. AND TAYLOR, WHITFIELD AND WEST, J. J., concur.

ELLIS, J. dissents.

ELLIS, J., Dissenting.

The plaintiff in the court below sought damages for personal injuries inflicted upon her by the negligent operation of the defendant's automobile by his employee. She alleged that the negligence of the person operating the automobile consisted in his reversing the automobile "without any warning of any nature whatsoever and with great force and violence ran into and against" her.

The plaintiff was a pedestrian going north on avenue J in the city of Miami, when she arrived at the southeast corner of the intersection of Avenue J. with Twelfth street she stopped for a few moments and watched the traffic for an opportunity to cross.

The defendant's automobile with its front toward the east was parked on the south side of twelfth street near the corner, another automobile was in front. As the plaintiff started across the street defendant's employee who had "cranked" his engine by hand replaced the crank handle in the car taking his position at the wheel backed the car so as to clear the automobile in front. He looked back before doing so to see if there was any one on the street in sight and seeing no one moved the car backwards after blowing the horn.

In answer to the following question by the court: "At the time of the accident did the chauffer blow any horn?" the plaintiff replied: "No, I did not hear any horn." At another time she said: "There was a lot of noise made by the traffic; blowing of horns and the like, but no horn was blown by his car." The plaintiff said she stood at the

corner about "a second or a couple of minutes" and she was struck just as soon as "I put my foot on the ground". she had observed the car when she was standing at the corner, but it was twenty feet to her right and not moving according to her statement. A little girl was with her on the right.

Witness for the plaintiff, Charles Wirts said that he was just across the street at his place of business filling a gasoline tank, saw the plaintiff "coming down the side walk at the crossing". "The car was in motion when I saw her coming down Avenue J. I think she was about the corner apparently coming down the side walk, when I saw her she was right on the side walk at the crossing of the 12th Street and was walking north toward 12th street, and the car was backing at this time; she was just about the corner when I noticed her..." He said there was not a great deal of traffic on the street at the time. He did not recall seeing any other car passing about that time. He said the car did not move "very slowly" but that he did not watch it, he was "watching the gasoline tank" which he was filling, but the car "*must* have moved pretty fast." This last statement was of course mere conjecture, but seemingly highly inconsistent with the facts to which he had testified.

The testimony of this witness for the plaintiff is irreconcilable with any other theory than that the car was in motion when the plaintiff stepped from the side walk to the street crosssing. In other words that she stepped in the path of the automobile which was moving in her direction. She denied that, but the fact remains that the witness to the accident whom she produced to sustain her case testified in effect that she did. So the evidence as reasonably supports one theory as the other. It is elementary that in an action based upon negligent conduct the plaintiff has

the burden of proof, it is incumbent upon him to prove the negligent act which caused the injury, and while the defendant is required to prove his defense of contributory negligence, if he sets it up, yet if it appears in the evidence offered in behalf of the plaintiff the defense is sustained. So that if the evidence as reasonably supports two inconsistent or conflicting theories, manifestly the plaintiff has failed to meet the burden.

In an action founded upon negligence the burden of proof is upon the plaintiff and remains upon him throughout the trial. It is the duty of the plaintiff to prove affirmatively that the defendant has been negligent. It is not enough to prove that damage has been sustained by some event or error, by some act or omission of the defendant. The plaintiff must prove that the defendant in such act or omission violated a legal duty incumbent upon him. He must have violated some contract or rule or law, thus infringing upon the plaintiff's known rights, or he must prove facts and circumstances from which it can be ascertained with reasonable probability what particular precaution the defendant ought to have taken but did not take. The plaintiff must also prove facts from which it can fairly be inferred that the defendant's negligence was the cause and the proximate cause of the injury. Mere surmise or conjecture on any of these points will not do. The plaintiff need not prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. See Shearman & Redfield on Negligence Sec. 57; 20 R. C. L. 194; 29 Cyc 597-600; Daniel v. Metropolitan R. Co., L. R. 3 C. P. 216; McCarthy v. Boston Duck Co., 165 Mass. 165, 42 N. E. Rep. 568; Hainlin v. Budge 56 Fla. 342, 47 South. Rep. 825.

Applying the foregoing principles to the case at bar one

looks in vain for the act of negligence of which the defend-
ant was guilty. The mere fact that the plaintiff was in-
jured by the automobile does not of itself show negligence
upon defendant's part. Was the parking of his automobile
at or near the corner of Avenue J. and twelfth street or
the backing of the car to avoid the one ahead, a violation
of a city ordinance? The evidence does not show it. There
is no evidence to show that the defendant's employee was
not entirely within his rights. There is no direct evidence
nor any circumstance from which the inference could be
reasonably drawn, that the operator of the automobile
drove the car backward with undue speed.

The plaintiff said the chauffeur did not sound the horn,
but she also said that there was much noise of traffic "blow-
ing of horns and the like." The plaintiff's witness Wirt
said there was not a great deal of traffic on the street and
he did not recall seeing any other car at the time. The
chauffeur said he did blow the horn. What legal duty did
the defendant owe to the plaintiff that he failed to observe?
The answer rests only in conjecture. The plaintiff said
the accident was due to the driver's carelessness, but that
fact is by no means apparent from the evidence. And it
is not a fair inference from the facts and verdicts cannot
be said to rest upon substantial evidence when there is no
other foundation for them than such surmises which may
not be entirely disinterested.

If the chauffuer backed the car, was that an omission of
duty which he owed to plaintiff, or a violation of right
which she had? Did the failure to sound a horn, if he
failed to give such warning, constitute the negligent act
or omission of duty? It is not shown that there are any
municipal regulations which require the sounding of horns
by automobile drivers under such circumstances, nor that

the chauffeur knew that the plaintiff was near. Did he back his car too rapidly under the circumstances? That is not the basis of her claim and she must recover if at all upon the case made by her declaration. Is it possible, that is to say, within the purview of judicial power, to assert that the backing of an automobile at reasonable speed across Avenue J. crossing at twelfth street in Miami, Florida, without blowing a horn is *per se* a negligent act on the part of the operator of the automobile? Does this court take judicial knowledge that that particular spot in Florida, at the hour when the accident in this case occurred, is a crowded thoroughfare, and therefore one driving an automobile and desiring to cross the street should give notice of his approach by sounding a horn?

Will the court go further in a case and require the horn to give forth a musical or unmusical note that will not blend with the turbulent noises of the crowded thoroughfare? Will the court on occasion require the horn to be sounded one or more times until a pedestrian crossing the street may reasonably be said to have heard the warning, and if he testifies that he did not hear the warning hold that statement to be sufficient to show negligence in that regard although the driver may have sounded the horn several times in fact? Where is the imaginary court made, right to end, what are to be its limitations?

I think that the evidence should have shown conditions existing at the time which required more caution than the chauffeur exercised before the plaintiff can recover.

The witness Wirts said the car was moving backward at the time he saw the plaintiff coming down the *sidewalk* of Avenue J. She said the car was twenty feet east of the corner, yet she reached the curbstone, paused a moment

and stepped into the street before the car moved the distance of twenty feet. To say that this circumstance shows negligent driving on the chauffer's part is to rest liability upon the weakest surmise. It is to hold the defendant liable upon conjecture which has not the merit of resting upon the merest suspicious circumstance.

The defendant's car was where he had a right to place it, so far as the evidence shows to the contrary, he was entirely within his rights in backing it. It is not shown that he backed it with undue speed. The statement of the plaintiff that she did not hear the horn is negative, as against this was her statement that horns were blowing and the testimony of the chauffeur that he did blow his horn.

There is nothing to show that the chauffeur could have done anything that he did not do to prevent the accident. The very character of the injuries sustained, a twisted or sprained ankle, the foot having been caught under the car, and an injured shoulder, would seem to refute the assertion that the automobile was driven rapidly backward at the time of the accident. But that claim is not the basis of the action, it rests upon the allegation that no warning of any nature whatsoever was given of the approach of the car. The allegation was not supported by any evidence of a substantial character. Yet the jury returned a verdict of twelve thousand dollars against the defendant. The trial court reduced it to seven thousand five hundred dollars and this court now orders a further remittitur of two thousand five hundred dollars. Why? Because the damages appear to be excessive? How may such claim be substantiated in view of the plaintiff's testimony and that of the physician as to her earning capacity, the nature and character of her injuries and her age and decreased earning capacity and the testimony as to her life expectancy?

The plaintiff was painfully injured, her earning capacity substantially decreased and her life expectancy was shown to be many years, but notwithstanding her unfortunate injuries the law does not contemplate that the person whose act contributed to the accident shall pay the damage unless it be shown that he was guilty of a violation of some duty which he owed to her. I think the evidence failed to establish the facts from which such inference could be reasonably drawn. I must therefore dissent from the conclusion reached by the majority in this case.